Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 15, 2003     Decided January 16, 2004

No. 02-7085

ELIZABETH A. CICIPPIO-PULEO, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN AND
IRANIAN MINISTRY OF INFORMATION AND SECURITY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01496)

———

*Thomas L. Gowen* argued the cause for appellants. With him on the briefs were *James J. Oliver* and *Steven J. McCool.*

*Stuart H. Newberger* argued the cause for *amicus curiae* Blake Kilburn in support of appellants. With him on the brief were *Michael L. Martinez, Laurel Pyke Malson* and *F. Ryan Keith.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Elizabeth B. Wydra*, Supervising Attorney, argued the cause as *amicus curiae* in support of the District Court's judgment. With her on the brief were *Steven H. Goldblatt*, Director of the Appellate Litigation Program, appointed by the court, and *William J. Brown*, *Varu Chilakamarri*, and *Ruthanne M. Deutsch*, Student Counsel.

*Douglas Letter*, Litigation Counsel, U.S. Department of Justice, argued the cause for *amicus curiae* The United States. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, *Gregory G. Katsas*, Deputy Assistant Attorney General, *H. Thomas Byron III*, Attorney, and *Mark A. Clodfelter*, Attorney, U.S. Department of State.

Before: EDWARDS, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS

EDWARDS, *Circuit Judge*: This case involves a lawsuit brought against the Islamic Republic of Iran ("Iran") under the terrorism exception, 28 U.S.C. § 1605(a)(7), to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11 (2000). The plaintiffs in the suit are the adult children and siblings of Joseph J. Cicippio, a victim of terrorist hostage-taking. Joseph Cicippio was abducted in 1986 by Hizbollah, an Islamic terrorist organization that receives material support from Iran. He was held hostage until 1991, confined in inhumane conditions and frequently beaten. In 1996, Joseph Cicippio and his wife sued Iran for the tortious injuries they sustained as a result of Mr. Cicippio's kidnaping, imprisonment, and torture. Iran failed to respond to the complaint and default was entered on November 13, 1997. The case was tried *ex parte* and, on August 27, 1998, the District Court entered judgment against Iran in favor of Mr. and Mrs. Cicippio in the amount of $30 million. *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 64, 70 (D.D.C. 1998). No appeal was taken.

In 2001, Joseph Cicippio's children and siblings sued Iran for the intentional infliction of emotional distress and loss of solatium they suffered as a result of Mr. Cicippio's ordeal.

The Iranian defendants failed to respond to the complaint and the District Court entered default on January 2, 2002. The Cicippios filed a motion for summary judgment on January 10, 2002. Subsequently, on January 24, 2002, plaintiffs moved to consolidate their suit with Mr. and Mrs. Cicippio's case, which by then had been closed. On June 21, 2002, the District Court denied the motions for summary judgment and consolidation. The court also *sua sponte* dismissed the Cicippios' complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3), holding that "the FSIA, as amended, does not confer subject matter jurisdiction upon it to entertain claims for emotional distress and solatium brought by claimants situated as are these plaintiffs upon the allegations of their complaint." *Cicippio-Puleo v. Islamic Republic of Iran*, Civ. No. 01-1496, slip op. at 2, (D.D.C. June 21, 2002), *reprinted in* Appendix ("App.") 3, 4. Joseph Cicippio's children and siblings now appeal. Responding to our request, the Justice Department has filed a brief as *amicus curiae* stating the position of the United States. The Government's position is that neither section 1605(a)(7) of the FSIA nor the Flatow Amendment, 28 U.S.C. § 1605 note, creates a private cause of action against foreign governments for acts of hostage taking or torture.

We affirm the judgment of the District Court. Section 1605(a)(7) of the FSIA abrogates foreign sovereign immunity and provides jurisdiction in specified circumstances, but it does not create a private cause of action. By its clear terms, the Flatow Amendment provides a private right of action only against individual officials, employees, and agents a foreign state, but not against a foreign state itself. Plainly, neither section 1605(a)(7) nor the Flatow Amendment, separately or together, establishes a cause of action against foreign state sponsors of terrorism. Therefore, the Cicippios' suit cannot proceed on these grounds. However, because the Cicippios' suit was filed in the wake of judgments in favor of Mr. and Mrs. Cicippio and other hostage victims, they may have been misled in assuming that the Flatow Amendment afforded a cause of action against foreign state sponsors of terrorism. We therefore affirm the judgment of the District Court, but

remand the case to allow plaintiffs an opportunity to amend their complaint to state a cause of action under some other source of law. We reserve judgment, however, on whether the Cicippios have any viable basis for an action against Iran, leaving that issue to the District Court in the first instance.

## I. Background

### A. Facts

On the morning of September 12, 1986, Joseph. J. Cicippio was kidnaped in Beiruit, Lebanon, by the terrorist group Hizbollah, an agent of Iran's Ministry of Information and Security ("MOIS"). At the time of his abduction, Mr. Cicippio was comptroller of the American University of Beiruit. Hizbollah held him hostage for 1,908 days. During that time, he was randomly beaten, confined in rodent- and scorpion-infested cells, and bound by chains. He suffered from numerous medical problems emanating from the inhumane treatment that he experienced during his captivity. At some point after Mr. Cicippio was taken hostage, he was forced to undergo major surgery for an unidentified abdominal condition that has left a ten-inch scar on his abdomen. *See Cicippio*, 18 F. Supp. 2d at 66.

In 1996, Joseph Cicippio filed suit against Iran under the "terrorism exception" to the FSIA, 28 U.S.C. § 1605(a)(7), and the Flatow Amendment, 28 U.S.C. § 1605 note. His lawsuit was joined by his wife, Elham Cicippio, two other hostage victims, and the wife of one of the other victims. The Iranian defendants did not respond to the complaint and were found in default. The case was tried *ex parte* and, on August 27, 1998, the District Court rendered a judgment for Joseph Cicippio in the amount of $20 million in damages for lost wages and opportunities and compensatory damages for pain and suffering and mental anguish, and $10 million for Mrs. Cicippio in damages for loss of her husband's society and companionship and mental anguish. *See Cicippio*, 18 F. Supp. 2d at 64, 70. Iran never entered an appearance in the case and no appeal was taken from the judgment of the District Court.

The instant case arises from a lawsuit brought in 2001 by Joseph Cicippio's seven adult children and seven siblings against Iran and MOIS for the intentional infliction of emotional distress and loss of solatium they sustained as a result of Mr. Cicippio's ordeal. The suit was based on claims purporting to arise under section 1605(a)(7) and the Flatow Amendment. On January 2, 2002, after Iran failed to respond to the complaint, the District Court entered a default judgment for the Cicippio children and siblings. On January 10, 2002, the Cicippios filed a motion for summary judgment. They subsequently filed a motion to consolidate their case with Mr. and Mrs. Cicippio's lawsuit against Iran, which by then had been closed. The motion for summary judgment included affidavits from the children and siblings establishing that Mr. Cicippio's captivity caused them to suffer from emotional distress by virtue of the harm done to him.

## B. The Statutory Framework

The FSIA provides that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Under the FSIA, foreign states enjoy immunity from suit in U.S. courts unless Congress waives immunity under an enumerated exception. In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted the "terrorism exception" to the FSIA, waiving the immunity of foreign states and their agents in any case

> in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state

while acting within the scope of his or her office, employment, or agency . . .

28 U.S.C. § 1605(a)(7). This provision only waives the immunity of a foreign state defendant that has been specifically designated by the State Department as a "state sponsor of terrorism," 28 U.S.C. § 1605(a)(7)(A), and does not apply if

(i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

(ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

28 U.S.C. § 1605(a)(7)(B).

Five months after the passage of AEDPA, Congress enacted a separate provision, titled *Civil Liability for Acts of State Sponsored Terrorism*, which created a private right of action against officials, employees, and agents of foreign states for the conduct described in § 1605(a)(7). *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, Div. A, Title I, § 101(c) [Title V, § 589], 110 Stat. 3009-172 (codified at 28 U.S.C. § 1605 note). This provision is known as the "Flatow Amendment," in recognition of the family of Alisa Flatow, a woman who died as the result of a terrorist bombing in Israel. *See Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 12 (D.D.C. 1998). The Flatow Amendment provides:

(a) An official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [section 2405(j) of the Appendix to Title 50, War and National Defense] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the

national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code [subsec. (a)(7) of this section] for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7) [subsec. (a)(7) of this section].

28 U.S.C. § 1605 note.

It is undisputed that the Flatow Amendment permits U.S. nationals to pursue a private right of action for terrorism against officials, employees, and agents of designated foreign states acting in their personal capacities. At issue here is whether section 1605(a)(7) and the Flatow Amendment similarly provide a cause of action against a *foreign state*.

## C.   The District Court's Judgment

The District Court assumed that plaintiffs' factual allegations were true, but denied both their motion to consolidate their case with Mr. and Mrs. Cicippio's case and their motion for summary judgment. The court also *sua sponte* dismissed the Cicippios' complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3), concluding that "the FSIA, as amended, does not confer subject matter jurisdiction upon it to entertain claims for emotional distress and solatium brought by claimants situated as are these plaintiffs upon the allegations of their complaint." *Cicippio-Puleo*, Civ. No. 01-1496, slip op. at 2, App. 4. Noting that a foreign state is "liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, the District Court held that the plaintiffs could not recover under the prevailing common law rule governing third party claims for outrageous conduct causing severe emotional distress. *Cicippio-Puleo*, Civ. No. 01-1496, slip op. at 3-4, App. 5-6. The District Court cited the Restatement (Second) of Torts for the proposition that a third party claimant must be present at the scene of the victim's torment in order to state a claim for intentional infliction of emotional

distress. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 46 (1986)). The District Court also held that solatium damages were unavailable to Mr. Cicippio's adult children and siblings, because "another generally observed rule of American common law has refused to recognize a right to recover damages for loss of 'society and companionship' by other than spouses for injury to a third party – even a relative – not resulting in third party's death." *Cicippio-Puleo*, Civ. No. 01-1496, slip op. at 4, App. 6.

As noted above, the District Court based its dismissal of the complaint on two grounds: Rule 12(b)(6) ("failure to state a claim upon which relief can be granted") and Rule 12(h)(3) ("the court lacks jurisdiction of the subject matter"). The second ground is inapposite, for it is clear that the District Court had jurisdiction pursuant to the statutory waiver of sovereign immunity under 28 U.S.C. § 1605(a)(7). Nonetheless, in their arguments to this court, the parties do not disagree that the principal basis for the District Court's dismissal was not a lack of jurisdiction, but, rather, plaintiffs' failure to state claims upon which relief could be granted. In other words, the parties do not disagree that the District Court's disposition embraces the conclusion that the plaintiffs cannot pursue their claims of emotional distress and loss of solatium against a foreign state under the Flatow Amendment. The Cicippios now appeal the District Court's dismissal of their claims.

## D. The Appointment of *Amicus Curiae* and the Issues on Appeal

Because Iran has never entered an appearance in this litigation, the court appointed the Georgetown University Law Center's Appellate Litigation Program as *amicus curiae* to present arguments in support of the District Court's judgment.*

---

* As they have done in the past, see *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 note* (D.C. Cir. 2003), the advocates from the Appellate Litigation Program responded admirably on very short notice in assisting the court with an outstanding brief and oral argument.

The court also ordered the parties to brief and argue, *inter alia*, the following issues:

> " 'Whether the FSIA creates a federal cause of action for torture and hostage taking against foreign states,' or only against their 'official[s], employee[s] or agent[s]' as specified in the [Flatow] Amendment," an issue raised but not decided in *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002).
>
> Whether Cicippio's children and siblings may sue for intentional infliction of emotional distress and loss of solatium.
>
> Whether appellants who seek to recover for emotional distress based on conduct directed at a third party must have been present at the time of the offending conduct, and, if so, whether appellants satisfied this "presence" requirement.

*Cicippio-Puleo v. Islamic Republic of Iran*, No. 02-7085 (D.C. Cir. July 9, 2003) (order appointing *amicus curiae*).

Subsequently, the court granted the motion of Blake Kilburn *et al.* ("Kilburn *amici*"), plaintiffs in other lawsuits in the district court against foreign states, for leave to participate as *amici curiae*. *Cicippio-Puleo v. Islamic Republic of Iran*, No. 02-7085 (D.C. Cir. July 31, 2003) (order granting motion for leave to participate as *amici curiae*).

### E. The Appearance of the United States as *Amicus Curiae*

On November 6, 2003, the court issued the following order soliciting the views of the United States:

> It is **ORDERED**, on the court's own motion, and in accordance with 28 U.S.C. § 517, that the United States of America file, by December 1, 2003, a statement of its current position on the question whether the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11 (2003), allows a cause of action for torture and hostage taking against foreign states, or

only authorizes statutory claims against state officials, employees, or agents as specified in the Flatow Amendment, 28 U.S.C. § 1605 (note) (2000).

When the United States appeared in *Roeder v. Islamic Republic of Iran*, the Government submitted, *inter alia*,

> The Flatow Amendment does not provide a cause of action against foreign nations or their governments. . . . Quite unambiguously, the statute provides a cause of action against individual "official[s], employee[s], or agent[s]" of foreign states for the acts of terrorism in which they have taken part, but not against foreign states themselves.

The United States' Motion to Vacate Default Judgment and Dismiss Plaintiffs' Claims at 20-21, *Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140 (D.D.C. 2002) (Civ. No. 00-3110 EGS). In a later submission in *Roeder*, the Government further submitted that,

> as the United States observed previously, the plain language of the Flatow Amendment provides the victims of terrorist acts a cause of action against the "official[s], employee[s] or agent[s] of a foreign state" who commit such acts, not against the foreign state itself.

Reply Memorandum in Support of the United States' Motion to Vacate Default Judgment and Dismiss Plaintiffs' Claims at 17, *Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140 (D.D.C. 2002) (Civ. No. 00-3110 EGS).

The court hereby requests that the United States indicate whether the Government's position on the scope of the cause of action under the Flatow Amendment remains the same as indicated above, and, if not, explain how and why the position of the United States has changed.

*Cicippio-Puleo v. Islamic Republic of Iran*, No. 02-7085 (D.C. Cir. Nov. 5, 2003) (order requesting statement of United States).

After receiving a two-day extension of time in which to submit its position, the United States filed a brief as *amicus curiae* on December 3, 2003, stating the firm view that the Flatow Amendment does not provide a private right of action against a foreign state:

> Neither Section 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, offers any indication that Congress intended to take the more provocative step of creating a private right of action against foreign governments themselves. Such a move could have serious adverse consequences for the conduct of foreign relations by the Executive Branch, and therefore an intent to do so should not be inferred – it should be recognized only if Congress has acted clearly in that direction.

Br. for the United States as *Amicus Curiae* at 5.

## II. ANALYSIS

### A. Standard of Review

In denying plaintiffs' motion for summary judgment and in *sua sponte* dismissing their complaint pursuant to Rule 12 (b)(6), the District Court assumed that plaintiffs' factual allegations were true. The standard of review covering both the denial of summary judgment and the dismissal for failure to state a claim is the same – *de novo*. *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1293 (D.C. Cir. 2002) (citing *Wilson v. Pena*, 79 F.3d 154, 160 n.1 (D.C. Cir. 1996)). And we may affirm a district court's *sua sponte* dismissal for failure to state a claim if it appears beyond a doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *See Baker v. Dir., United States Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990). Because we hold that the Flatow Amendment does not authorize a cause of action against foreign states, it is clear that plaintiffs can allege no

facts in their lawsuit against Iran that would entitle them to relief under the Flatow Amendment. Therefore, we affirm the District Court's dismissal for failure to state a claim under section 1605(a)(7) and the Flatow Amendment.

## B. The Limited Cause of Action under the Flatow Amendment

Section 1605(a)(7) waives the sovereign immunity of a designated "foreign state" in actions in which money damages are sought for personal injury or death caused by one of the specified acts of terrorism, if the act of terrorism or provision of material support is engaged in by "an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605(a)(7). Section 1605(a)(7) is merely a jurisdiction-conferring provision that does not otherwise provide a cause of action against either a foreign state or its agents. However, the Flatow Amendment, 28 U.S.C. § 1605 note, undoubtedly does provide a cause of action against "[a]n official, employee, or agent of a foreign state designated as a state sponsor of terrorism" "for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7)." The question here is whether the Flatow Amendment, which does not refer to "foreign state," may be construed, either alone or in conjunction with section 1605(a)(7), to provide a cause of action against a foreign state.

This issue was flagged in *Price v. Socialist People's Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002), where we observed that

> [t]he FSIA is undoubtedly a jurisdictional statute which, in specified cases, eliminates foreign sovereign immunity and opens the door to subject matter jurisdiction in the federal courts. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620, 103 S. Ct. 2591, 2596-97, 77 L.Ed.2d 46 (1983). There is a question, however, whether the FSIA creates a federal cause of action

> for torture and hostage taking *against foreign states.*

*Id.* at 87. Since *Price*, some district court opinions in this circuit have held or assumed that the Flatow Amendment creates a cause of action against foreign states. *See Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) (holding that the Flatow Amendment provides a cause of action against a foreign state). *See also Regier v. Islamic Republic of Iran*, 281 F. Supp. 2d 87, 98-99 (D.D.C. 2003) (adopting *Cronin*'s reasoning that there is a cause of action against foreign states under the Flatow Amendment); *Kilburn v. Islamic Republic of Iran*, 277 F. Supp. 2d 24, 36-37 (D.D.C. 2003) (same).

This court, however, has never affirmed a judgment that the Flatow Amendment, either alone or in conjunction with section 1605(a)(7), provides a cause of action against a foreign state. The issue was raised in *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003), but the appeal was resolved on other grounds. In *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003), the court noted that, "[i]n view of the Flatow amendment's failure to mention the liability of foreign states, it is 'far from clear' that a plaintiff has a substantive claim against a foreign state under the Foreign Sovereign Immunities Act," *id.* at 234 n.3, but that appeal was also decided on other grounds.

We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself. Because we hold that there is no statutory cause of action against Iran under these provisions, we affirm the District Court's judgment without deciding whether the evidence presented by the plaintiffs is sufficient to recover for intentional infliction of emotional distress or loss of solatium.

**\* \* \* \***

There is a clearly settled distinction in federal law between statutory provisions that waive sovereign immunity and those that create a cause of action. It cannot be assumed that a claimant has a cause of action for damages against a government agency merely because there has been a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 483-84 (1994). As the Supreme Court has noted:

> The first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver, as in this case, the second inquiry comes into play–that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief.

*Id.* at 484.

The Supreme Court has also made it clear that the federal courts should be loathe to "imply" a cause of action from a jurisdictional provision that "creates no cause of action of its own force and effect . . . [and] imposes no liabilities." *See Touche Ross & Co. v. Reddington*, 442 U.S. 560, 577 (1979). "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Id.* at 578. In adhering to this view, the Supreme Court has declined to construe statutes to imply a cause of action where Congress has not expressly provided one. *See, e.g., Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001) (recognizing the Court's retreat from its previous willingness to imply a cause of action where Congress has not provided one); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

Unsurprisingly, the Supreme Court has applied the distinction between immunity and liability in interpreting the FSIA itself, explaining that "[t]he language and history of the FSIA clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or

instrumentality." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983). With this case law to guide us, there can be little doubt of the outcome in this case.

**\* \* \* \***

The language of section 1605(a)(7) and the Flatow Amendment – the only provisions upon which plaintiffs rely – is clear. In declaring that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States . . .," 28 U.S.C. § 1605(a)(7) merely abrogates the immunity of foreign states from the jurisdiction of the courts in lawsuits for damages for certain enumerated acts of terrorism. It does not impose liability or mention a cause of action. The statute thus confers subject matter jurisdiction on federal courts over such lawsuits, but does not create a private right of action.

As noted above, the Flatow Amendment imposes liability and creates a cause of action. But the liability imposed by the provision is precisely limited to "an official, employee, or agent of a foreign state designated as a state sponsor of terrorism." "Foreign states" are not within the compass of the cause of action created by the Flatow Amendment. In short, there is absolutely nothing in section 1605(a)(7) or the Flatow Amendment that creates a cause of action against foreign states for the enumerated acts of terrorism.

We also agree with the United States that, insofar as the Flatow Amendment creates a private right of action against officials, employees, and agents of foreign states, the cause of action is limited to claims against those officials in their *individual*, as opposed to their official, capacities:

> As the Supreme Court repeatedly has explained, an *official*-capacity claim against a government official is in substance a claim against the government itself. See, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). . . . By definition, a damages judgment in an official-capacity suit is enforceable against the state itself (and only against the state). See *Gra-*

*ham*, 473 U.S. at 166 . . .; see also Fed. R. Civ. P. 25(d) . . . . Thus, to construe the Flatow Amendment as permitting official-capacity claims would eviscerate the recognized distinction between suits against governments and suits against individual government officials . . . . [T]he text of the the Flatow Amendment and Section 1605(a)(7), as well as all relevant background interpretive principles . . . foreclose any such construction.

Br. for the United States as *Amicus Curiae* at 17.

\* \* \* \*

The plaintiffs and *amicus curiae* dispute both the meaning and relevance of the legislative history of the FSIA or the Flatow Amendment in support of their competing arguments to the court. The legislative history is largely irrelevant, however, because the statutory language is clear – nothing in section 1605(a)(7) or the Flatow Amendment establishes a cause of action against *foreign states*. And, as we explain below, there is nothing in the legislative history that raises any serious doubts about the meaning of the statute.

In 1976, the House Judiciary Committee Report explained that the FSIA was "not intended to affect the substantive law of liability." H.R. REP. No. 94-1487, at 12 (1976). It stated that the statute was intended to preempt other federal or state law that accorded sovereign immunity, and to discontinue the practice of judicial deference to suggestions of immunity from the executive branch. *Id.* But the statute was not intended to affect "the attribution of responsibility between or among entities of a foreign state; for example, whether the proper entity of a foreign state has been sued; or whether an entity sued is liable in whole or in part for the claimed wrong." *Id.*

When Congress passed section 1605(a)(7), the Conference Committee report explained:

This subtitle provides that nations designated as state sponsors of terrorism under section 6(j) of the

> Export Administration Act of 1979 will be amenable to suit in U.S. courts for terrorist acts. It permits U.S. federal courts to hear claims seeking money damages for personal injury or death against such nations and arising from terrorist acts they commit, or direct to be committed, against American citizens or nationals outside of the foreign state's territory, and for such acts within the state's territory if the state involved has refused to arbitrate the claim.

H.R. CONF. REP. NO. 104-518, at 112 (1996). It is noteworthy that the legislative history does not say that section 1605(a)(7) imposes liability against foreign states or create a cause of action against them.

When Congress later passed the appropriations bill that included the Flatow Amendment, there was very little legislative history purporting to explain the enactment. The Conference Report said: "The conference agreement inserts language expanding the scope of monetary damage awards available to American victims of international terrorism. The conferees intend that this section shall apply to cases pending upon enactment of this Act." H.R. CONF. REP. NO. 104-863, at 987 (1996). As the United States notes in its brief, "[o]n its face, that statement addresses only issues of damages and retroactivity, not the question whether foreign states are proper defendants in the first place." Br. for the United States as *Amicus Curiae* at 12. We agree. Thus, the legislative history of the Flatow Amendment is not inconsistent with the clear terms of the statute.

Subsequent enactments by Congress providing for the payment or enforcement of judgments entered against foreign states in cases brought under § 1605(a)(7) fail to establish that Congress created a cause of action against foreign states. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 2002, 114 Stat. 1464, 1541-43; Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201, 116 Stat. 2322, 2337-39. As we explained in *Roeder*, these statutes merely provide for payment "*if* an individual has a judgment against Iran," but they do not address or

resolve the anterior question "whether plaintiffs are legally entitled to such a judgment." 333 F.3d at 239 (emphasis added). It is entirely plausible for Congress to direct the United States to compensate victims of terrorism without purporting to establish or support a cause of action against foreign state sponsors of terrorism.

\* \* \* \*

There is nothing anomalous in Congress's approach in enacting the Flatow Amendment. As we noted in *Price*, the passage of § 1605(a)(7) involved a delicate legislative compromise. While Congress sought to create a judicial forum for the compensation of victims and the punishment of terrorist states, it proceeded with caution, in part due to executive branch officials' concern that other nations would respond by subjecting the American government to suits in foreign countries. *See Price*, 294 F.3d at 89 (citing John F. Murphy, *Civil Liability for the Commission of International Crimes as an Alternative to Criminal Prosecution*, 12 HARV. HUM. RTS. J. 1, 35-37 (1999)).

The plaintiffs suggest that our construction of the Flatow Amendment "w[ill] mean that what Congress gave with one hand in section 1605(a)(7) it immediately took away with the other in the Flatow Amendment." *See Cronin*, 238 F. Supp. 2d at 232. We disagree. Section 1605(a)(7) does not purport to grant victims of terrorism a *cause of action* against foreign states, or against officials, employees, or agents of those states acting in either their official or personal capacities. Therefore, the Flatow Amendment's authorization of a limited cause of action against officials, employees, and agents acting in their personal capacities takes nothing away from § 1605(a)(7). What § 1605(a)(7) does is to make it clear that designated foreign state sponsors of terrorism will be amenable to suits in United States courts for acts of terrorism in cases in which there is a viable cause of action.

Clearly, Congress's authorization of a cause of action against officials, employees, and agents of a foreign state was a significant step toward providing a judicial forum for the

compensation of terrorism victims. Recognizing a federal cause of action against foreign states undoubtedly would be an even greater step toward that end, but it is a step that Congress has yet to take. And it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states. Therefore, we decline to imply a cause of action against foreign states when Congress has not expressly recognized one in the language of section 1605(a)(7) or the Flatow Amendment.

\* \* \* \*

Although we affirm the District Court's dismissal of plaintiffs' complaint for failure to state a claim under section 1605(a)(7) and the Flatow Amendment, we will nonetheless remand the case. The Cicippios' suit was filed in the wake of judgments in favor of Mr. and Mrs. Cicippio and other hostage victims, so they may have been misled in assuming that the Flatow Amendment afforded a cause of action against foreign state sponsors of terrorism. We will therefore remand the case to allow plaintiffs an opportunity to amend their complaint to state a cause of action under some other source of law, including state law, as the Kilburn *amici* have suggested.

In remanding, we do not mean to suggest, one way or the other, whether plaintiffs have a viable cause of action. The possibility that an alternative source of law might support such a claim was addressed only by *amici*, and we do not ordinarily decide issues not raised by parties. *See, e.g.*, *Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998). Accordingly, we will leave it to the District Court in the first instance to address any amended complaint that is offered by plaintiffs.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted, and remand the case for further proceedings consistent with this opinion.