**Olivia RUX, et al., Plaintiffs,**

v.

**The REPUBLIC OF SUDAN, Defendant.**

**Civil Action No. 2:04cv428.**

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 3, 2009.

---

Carl David Gray, Gregory N. Stillman, Brent Lee VanNorman, Hunton & Williams, Norfolk, VA, Douglas Knox Bemis, Jr., Hunton & Williams LLP, Washington, D.C., for Defendant.

Mark Anthony Exley, United States Attorney Office, Norfolk, VA, Varudhini Chilakamarri, Ronald James Wiltsie, U.S. De-

partment of Justice, Washington, D.C., for Respondent.

Alan Woodbury Young, Young Law Firm P.C., Portola Valley, CA, Timothy Paul Sceviour, Abrons Fasanaro & Sceviour PLLC, Mary Jane Hall, Kaufman & Canoles P.C., Norfolk, VA, Nelson Marion Jones, III, Nelson M. Jones III, Houston, TX, Andrew C. Hall, Hall Lamb and Hall P.A., Miami, FL, James Davis Cooper–Hill, James D. Cooper–Hill, Rockport, TX, for Plaintiff.

Kelly Gurley Roberts, The Law Office of John W. Bonney P.C., Norfolk, VA, for Brady Costelow, (Notice).

### *OPINION & ORDER*

ROBERT G. DOUMAR, District Judge.

This case is before the Court on remand from the Fourth Circuit. The Fourth Circuit instructed this Court to "determine whether FSIA's creation of a private right of action for state-sponsored terrorism takes precedent over DOHSA's remedy for death on the high seas when, as here, terrorism-related deaths occurred on the high seas." *Rux v. Republic of Sudan,* No. 07–1835 (4th Cir. July 14, 2009).

Plaintiffs Olivia Rux, *et al.* ("Plaintiffs"), have filed a Motion for Leave to Supplement Their Fourth Amended Complaint to add a cause of action under 28 U.S.C.A. § 1605A(c) (2008). The D.C. Circuit has held that § 1605A does not automatically apply retroactively to pending cases.[1] Rather, "Section 1605A only ap-

plies to cases brought prior to January 28, 2008 if they meet the four requirements" set forth in § 1083(c)(2) of the National Defense Authorization Act (NDAA) for Fiscal Year 2008, Pub.L. No. 110–181, 122 Stat. 3, 342. *Welch v. Islamic Republic of Iran,* 545 F.Supp.2d 118, 119 (D.D.C.2008). One of these four requirements is that the plaintiffs must have "relied upon [28 U.S.C. § 1605(a)(7) ] as creating a cause of action." Pub. L. No. 110–181, § 1083(c)(2)(A)(ii), 122 Stat. 3, 342. In the case at hand, Plaintiffs never relied upon § 1605(a)(7) as creating a cause of action. Therefore, § 1605A has no retroactive application to their pending case, and Plaintiffs have no statutory right to amend their complaint to add § 1605A as a cause of action. Although Plaintiffs argue that § 1083(c)(2)(A)(ii) is unconstitutional, the Court has reviewed this argument and finds it to be without merit.

Under these circumstances, the Court finds that § 1605A does not supercede DOHSA as a cause of action. Section 1605A(c) is not a viable cause of action that can be invoked on the present motion to amend. At the present time, DOHSA is Plaintiffs' exclusive cause of action.[2] Plaintiffs' Motion for Leave to Supplement Their Fourth Amended Complaint is **DENIED.**

### I. FACTUAL & PROCEDURAL BACKGROUND

The facts giving rise to this case are set forth more fully in the Court's previous

---

**1.** *See Simon v. Republic of Iraq,* 529 F.3d 1187, 1192 (D.C.Cir.2008), *overruled on other grounds* —— U.S. ——, 129 S.Ct. 2183, 173 L.Ed.2d 1193 (2009); *Gates v. Syrian Arab Republic,* 646 F.Supp.2d 79, 89–90 (D.D.C. 2009); *Saludes v. Republica De Cuba,* 655 F.Supp.2d 1290, 1296–97 (S.D.Fla.2009); *Kirschenbaum v. Islamic Republic of Iran,* 572 F.Supp.2d 200, 204 n. 1 (D.D.C.2008).

**2.** It is not necessary to decide whether, as an abstract question of law, a properly filed

claim under § 1605A would supersede DOHSA as a remedy for terrorism-related deaths on the high seas. Indeed, the Court cannot rule on this hypothetical question without violating the long-standing federal prohibition on advisory opinions. *See Jackson v. Jackson,* 857 F.2d 951, 955 n. 1 (4th Cir.1988) ("[F]ederal courts are thus prevented from issuing opinions on abstract or hypothetical questions or from giving advisory opinions.").

opinion, *Rux v. Republic of Sudan,* 495 F.Supp.2d 541, 542–553 (E.D.Va.2007). To summarize briefly, this action arises from the terrorist bombing of the American navy vessel U.S.S. Cole ("Cole") on October 12, 2000. While the Cole was refueling in the Port of Aden in Yemen, a small boat pulled up alongside the navy vessel and detonated a suicide bomb. The explosion and its aftermath killed seventeen Navy sailors and wounded forty-two others.

Plaintiffs are fifty-nine surviving family members of the seventeen sailors killed in the attack on the Cole. On July 16, 2004, Plaintiffs filed suit against Defendant Republic of Sudan ("Sudan"), alleging that Sudan knowingly and willfully provided material support and resources to Osama Bin Laden and Al Qaeda, the perpetrators of the attack on the Cole. Plaintiffs' initial Complaint alleged causes of action "under 18 U.S.C. § 2333 and 28 U.S.C. § 1606, as well as the wrongful death statutes of the place of permanent residence of each decedent, to wit, the State of Virginia and the State of California." (Compl.¶ 13). Plaintiffs amended their complaint on August 10, 2004, to add a cause of action under the "Torture Victim Protection Act of 1991 by operation of 28 U.S.C. § 1606 . . . ." (Am. Compl. ¶ 15). On September 17, 2004, Plaintiffs filed a Second Amended Complaint which asserted the same causes of action as their original Complaint, but dropped their cause of action under the Torture Victim Protection Act. (Second Am. Compl. ¶ 23).

Sudan failed to defend the suit, and a default judgment was entered on February 16, 2005. On June 15, Plaintiffs filed a Third Amended Complaint. Paragraph 33 of the Third Amended Complaint stated as follows:

> Plaintiffs base the claims of each plaintiff on: State common law or statutory law for wrongful death for the State of residence for each victim killed in the bombing of the U.S.S. Cole; State common law or statutory law for intentional infliction of mental or emotional distress for each Plaintiff herein; State common law or statutory law for battery for each of Plaintiffs' decedent; federal common law for loss of solatium as set forth in *Surette v. Islamic Republic of Iran,* 231 F.Supp.2d 260 (D.D.C.2002) for each Plaintiff herein; the Restatement of Torts (Second) § 46(2) for each plaintiff herein.

(Third Am. Compl. ¶ 33). On June 17, 2005, Sudan entered an appearance and moved to vacate the entry of default. The Court vacated the entry of default, and Sudan moved to dismiss Plaintiffs' Third Amended Complaint. The Court denied Sudan's motion on August 26, 2005, 2005 WL 2086202.[3] Having failed to dismiss Plaintiffs' action, Sudan notified the Court that it would not participate any further in the proceeding. The Court twice ordered Sudan to file an answer or responsive pleading, but Sudan disregarded these orders. The clerk entered default against Sudan on February 2, 2007.

Pursuant to the Foreign Sovereign Immunity Act, 28 U.S.C. § 1608(e) (2006), a plaintiff suing a foreign sovereign is required to establish his "claim or right to relief by evidence satisfactory to the court" before an order of default judgment. The Court set a bench trial for March 13, 2007 to allow Plaintiffs to submit evidence as required by § 1608(e). On February 20,

---

**3.** The Court denied Sudan's motion on all grounds except failure to state a claim upon which relief can be granted, which it took under advisement until Sudan was to file an Answer. Sudan unsuccessfully appealed the Court's order. *See Rux v. Republic of Sudan,* 461 F.3d 461 (4th Cir.2006).

2007, Plaintiffs filed a Fourth Amended Complaint. Paragraph 24 of the Fourth Amended Complaint asserted causes of action "under 28 U.S.C. § 1606 for wrongful death under the general maritime common law, or alternatively under the Death on the High Seas Act, 46 U.S.C. §§ 761 et seq., and for the tort of intentional infliction of emotional distress under common law." (Fourth Am. Compl. ¶ 24).

The case was tried before this Court on March 13 and 14, 2007. At the conclusion of the trial, the Court concluded that there was sufficient evidence to enter default judgment against Sudan pursuant to 28 U.S.C. § 1608(e). On July 25, 2007, the Court issued an Opinion and Order detailing its factual findings and conclusions of law. *Rux v. Republic of Sudan*, 495 F.Supp.2d 541 (E.D.Va.2007). The Court found that Sudan had actively provided Al Qaeda with material support, that "such support was critical to Al Qaeda" in carrying out the attack on the Cole, and that "Sudan's material support to Al Qaeda led to the murders of the seventeen American servicemen and women on October 12, 2000, in the territorial waters of Yemen." *Id.* at 553–54.

> The Court noted that
> [w]hile the FSIA vests jurisdiction in federal courts to hear cases against foreign states, it does not afford plaintiffs with a substantive cause of action. Thus, once a court determines that subject matter jurisdiction exists, it must determine what, if any, causes of action the plaintiff may bring against the defendant, and whether the foreign state is liable on any of those claims.

*Id.* at 553. Based on applicable precedent and statutory law, the Court found the Death on the High Seas Act (DOHSA), 46 U.S.C. app. § 761 (2006) (current version at 46 U.S.C.A. § 30301 (2008)), to be Plaintiffs' exclusive cause of action. *Id.* at 558–65. The Court dismissed Plaintiffs' re-

maining claims and awarded Plaintiffs judgment against Sudan in the total amount of $7,956,344. These damages did not include recovery for non-pecuniary losses, which are not compensable under DOHSA. *Id.* at 566–67. According to Plaintiffs' Counsel, those Plaintiffs who were awarded damages have since collected on their judgments.

Plaintiffs filed an appeal in the Court of Appeals for the Fourth Circuit on August 23, 2007, challenging the dismissal of their claims for intentional infliction of emotional distress. While the case was pending on appeal, Congress passed the National Defense Authorization Act (NDAA) for Fiscal Year 2008, Pub. L. No. 110–181, 122 Stat. 3. Section 1083 of the NDAA creates a new cause of action against state sponsors of terrorism in 28 U.S.C.A. § 1605A(c) (2008). The right of action in § 1605A(c), unlike the right of action created by DOHSA, allows recovery for "solatium, pain and suffering, and punitive damages." In light of this statutory amendment, Plaintiffs moved for summary disposition of their appeal. Additionally, Plaintiffs filed a motion in this Court on January 29, 2008, to reopen their case and enter judgment under 28 U.S.C.A. § 1605A (2008).

On July 14, 2009, the Court of Appeals remanded the case to this Court for further to "determine whether FSIA's creation of a private right of action for state-sponsored terrorism takes precedent over DOHSA's remedy for death on the high seas when, as here, terrorism-related deaths occurred on the high seas. Following that determination, the court may, if warranted, reconsider its award of damages to Appellants."

On August 24, 2009, Plaintiffs filed the present Motion for Leave to Supplement the Fourth Amended Complaint. Plaintiffs assert that "[t]hrough a 28 U.S.C.

§ 1605A wrongful death cause of action, plaintiffs are permitted to assert claims of intentional infliction of emotional distress, loss of consortium, loss of solatium, and punitive damages. Plaintiffs were also expressly provided the right to assert these claims retroactively even after judgment has been entered in the case. *See* § 1083(c)(2), Pub. L. 110–81." (Pls.' Mot. for Leave to Supplement the Fourth Am. Compl. 3).

The Court ordered Sudan to respond to Plaintiffs' Motion for Leave to Supplement the Fourth Amended Complaint by October 1, 2009. On September 30, 2009, Counsel for Sudan advised the Court that "Sudan objects to this Court's subject matter jurisdiction and has instructed us not to defend or otherwise participate in this proceeding on the merits." The Court held a hearing on November 2, 2009, and ordered further briefing on the Plaintiffs' Motion. Sudan filed a supplemental memorandum on November 9, 2009. Plaintiffs filed a supplemental memorandum on November 25, 2009.

## II. STATUTORY BACKGROUND

The Foreign Sovereign Immunity Act (FSIA) of 1976, 28 U.S.C.A. §§ 1602–1611 (2008), is a statutory codification of the substantive law of sovereign immunity.[4] The FSIA reflects and expands upon the long-standing judicial practice of granting immunity to a foreign state for its public acts. Specifically, § 1604 of the Act provides that "[s]ubject to existing international agreements ... a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." Congress has enacted several exceptions to the grant of immunity in § 1604, including a "terrorism exception." 28 U.S.C. § 1605(a)(7) (2006) (current version at 28 U.S.C. § 1605A).

As originally enacted, nothing in the FSIA created a new right of action against foreign governments. *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 960 (2d Cir.1991). The FSIA instead provided that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity ..., the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 1606 (2006). Under this "pass-through" provision, plaintiffs could bring suit against a foreign government based on substantive federal or state law, and then strip the foreign government of sovereign immunity through one of the exceptions listed in §§ 1605–1607. *See, e.g. Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F.Supp.2d 120, 132–34 (D.D.C. 2005) (state law of assault, battery, and IIED; terrorism exception to FSIA).

In 1996, Congress added a cause of action to the FSIA by passing the "Flatow Amendment," Pub.L. No. 104–208, § 589, 110 Stat. 3009 (1996), which modified § 1605(a)(7) of the FSIA. The Flatow Amendment provided that "[a]n official, employee, or agent of a foreign state designated as a state sponsor of terrorism ... while acting within the scope of his or her office, employment, or agency shall be liable to a United States national ... for personal injury or death caused by acts of

---

**4.** *See Republic of Austria v. Altmann,* 541 U.S. 677, 695, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (stating that FSIA is codification of standards governing foreign sovereign immunity as an aspect of substantive federal law); *Dames & Moore v. Regan,* 453 U.S. 654, 685, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981) ("The principal purpose of the FSIA was to codify contemporary concepts concerning the scope of sovereign immunity and withdraw from the President the authority to make binding determinations of the sovereign immunity to be accorded foreign states.").

that official, employee, or agent for which the court of the United States may maintain jurisdiction under section 1605(a)(7)...." 28 U.S.C. § 1605(a)(7) note (repealed 2008).

The Flatow Amendment did not speak to the liability of a foreign government, but only to the liability of its officers or agents. Nonetheless, several district courts construed the Flatow Amendment to provide a private right of action against a foreign government.[5] In 2004, the D.C. Circuit rejected this interpretation in *Cicippio–Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C.Cir.2004). In *Cicippio–Puleo*, the D.C. Circuit held that the "Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself." *Id.* at 1033. For suits against foreign governments, the *Cicippio–Puleo* decision returned the law to a pre-Flatow-Amendment state, and forced plaintiffs to rely on state or federal laws other than FSIA to establish their causes of action.

In 2008, Congress sought to override the *Cicippio–Puleo* decision through an amendment to the FSIA. Section 1083 of the National Defense Authorization Act (NDAA) for Fiscal Year 2008, Pub. L. No. 110–181, 122 Stat. 3, creates a private cause of action against foreign governments under the FSIA. The NDAA amendment adds a new section, § 1605A, to the FSIA. Section § 1605A(c) provides:

> Private right of action.—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), ... shall be liable ... for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

## III. THE APPLICATION OF § 1605A TO PENDING CASES

Section § 1083(c) of the NDAA contains a detailed provision governing the application of § 1605A to pending cases. In brief, § 1083(c) allows a plaintiff to file a motion giving § 1605A retroactive effect in a pending case, but only if the four requirements of § 1083(c)(2)(A) are met. Stated in full, § 1083(c)(2) provides:

> (2) Prior actions.—
>
> (A) In general.—With respect to any action that—
>
> (i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of [FOEFRPA], before the date of the enactment of this Act,
>
> (ii) relied upon either such provision as creating a cause of action,
>
> (iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and
>
> (iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure, that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

---

**5.** *See, e.g., Cronin v. Islamic Republic of Iran*, 238 F.Supp.2d 222, 231 (D.D.C.2002) (holding that Flatow Amendment provides cause of action against foreign state).

(B) Defenses waived.—The defenses of res judicata, collateral estoppel, and limitation period are waived—

(i) in any action with respect to which a motion is made under subparagraph (A), or

(ii) in any action that was originally brought, before the date of the enactment of this Act, under section 1605(a)(7) of title 28, United States Code, or section 589 of the [FOEFRPA], and is refiled under section 1605A(c) of title 28, United States Code, to the extent such defenses are based on the claim in the action.

(C) Time limitations.—A motion may be made or an action may be refiled under subparagraph (A) only—

(i) If the original action was commenced not later than the latter of—

(I) 10 years after April 24, 1996; or

(II) 10 years after the cause of action arose; and

(ii) within the 60–day period beginning on the date of the enactment of this Act [Jan. 28, 2008].

For plaintiffs who do not qualify for retroactive effect under § 1083(c)(2), but who had previously filed actions under § 1605(a)(7), § 1083(c) allows the filing of a "related" suit under § 1605A. Subsection 1083(c)(3) provides as follows:

(3) Related actions.—If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code [this section], if the action is commenced not later than the latter of 60 days after—

(A) the date of the entry of judgment in the original action; or

(B) the date of the enactment of this Act [Jan. 28, 2008].

Plaintiffs who file a related suit under § 1083(c)(3) are not subject to *res judicata* or collateral estoppel defenses, to the extent that those defenses are based on the claims that they originally filed under § 1605(a)(7). Pub.L. No. 110–181, § 1083(c)(2)(B), 122 Stat. 3, 342.

The D.C. Circuit interpreted these provisions in *Simon v. Republic of Iraq,* 529 F.3d 1187, *rev'd on other grounds sub nom., Republic of Iraq v. Beaty,* —— U.S. ——, 129 S.Ct. 2183, 173 L.Ed.2d 1193 (2009). In relevant part, the D.C. Circuit stated as follows:

Plaintiffs with "pending cases" may invoke new § 1605A in certain circumstances. Pursuant to § 1083(c)(2) ("Prior Actions"), a plaintiff who detrimentally "relied upon" former § 1605(a)(7) of the FSIA "as creating a cause of action" and whose action was "pending before the courts in any form" when the NDAA became law was given 60 days within which to "refile" his suit based upon the new cause of action created by § 1605A(c). Section 1083(c)(3) of the NDAA ("Related Actions") authorizes a plaintiff who had "timely commenced" a "related action" under § 1605(a)(7) to bring "any other action arising out of the same act or incident," provided "the [new] action is commenced" within 60 days from the later of "(A) the date of the entry of judgment in the original action or (B) the date of the enactment of [the NDAA]."

*Id.* at 1192 (citations omitted; alteration in original). In other words, plaintiffs with cases filed before the passage of the NDAA must either "refile" an action under § 1083(c)(2) or bring a new action under § 1083(c)(3). The statute is "not automati-

cally retroactive." *Gates v. Syrian Arab Republic,* 646 F.Supp.2d 79, 89–90 (D.D.C. 2009); *see also Kirschenbaum v. Islamic Republic of Iran,* 572 F.Supp.2d 200, 203 n. 1 (D.D.C.2008) ("Plaintiffs mistakenly assert that § 1605A has automatic, retroactive application to any action previously brought under § 1605(a)(7) within the prescribed time limit.").

Despite the clear statutory text and the D.C. Circuit's ruling, plaintiffs have repeatedly tried to "refile" pending actions without satisfying the requirements of § 1083(c)(2). The courts have uniformly rejected their efforts. In *Estate of Botvin v. Islamic Republic of Iran,* for example, plaintiffs who "did not rely upon § 1605(a)(7) for a cause of action" tried to amend their complaint to proceed under § 1605A. 604 F.Supp.2d 22, 25 (D.D.C. 2009). The district court denied their request. *Id.*; *see also Bodoff v. Islamic Republic of Iran,* 567 F.Supp.2d 141, 142 (D.D.C.2008) (denying motion to give effect to judgment as if plaintiffs had filed under § 1605A because action was not pending before court); *Welch v. Islamic Republic of Iran,* 545 F.Supp.2d 118, 119 (D.D.C.2008) (same). Additionally, at least one district court has suggested that a refiled claim under § 1083(c)(2) is a "new claim for relief" within the meaning of Federal Rule of Civil Procedure 5(a)(2), and therefore must be served against the defendant before relief can be granted. *See Gates v. Syrian Arab Republic,* 646 F.Supp.2d 79 (D.D.C.2009).

## IV. APPLICATION OF § 1083(C)(2) TO THE PRESENT CASE

 Plaintiffs in the present case claim that "they are now expressly authorized

pursuant to § 1605A(c) to make a claim and recover damages as if the action had originally been filed under § 1605A." (Pls.' Br. in Support of Mot. for Leave to Supplement the Fourth Am. Compl. 6). The clear language of § 1083 compels a different conclusion. Based on the statutory text and precedent discussed above, the Court concludes that Plaintiffs can only invoke § 1605A retroactively in their pending case by "refiling" under § 1083(c)(2). Plaintiffs do not meet the conditions of § 1083(c)(2), because they never "relied upon" § 1605(a)(7) "as creating a cause of action." Therefore, their Motion to Amend the Fourth Amended Complaint must be **DENIED.**

The Court joins with the Court of Appeals for the D.C. Circuit in holding that § 1605A is not automatically retroactive, and that a refiling under § 1083(c)(2) is the only method whereby § 1605A can be retroactively applied to a pending case. In § 1083(c)(2) of the NDAA, Congress has set forth in considerable detail the conditions under which § 1605A can be retroactively applied to a pending cause of action. Presumably, a refiling under § 1083(c)(2) is the only possible way to add a retroactive § 1605A claim to a pending case. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 273–80, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (discussing presumption against retroactive application of statute); *Reyes-Gaona v. North Carolina Growers Ass'n,* 250 F.3d 861, 865 (4th Cir.2001) ("[T]he doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").[6]

---

**6.** Plaintiffs argue that the judicial presumption against retroactivity does not apply because "laws that alter the rules of foreign sovereign immunity retroactively when applied to pending cases are not subject to the judicial presumption against retroactive ef-

fect." (Pls.' Br. in Support of Mot. for Leave to Supplement the Fourth Am. Compl. 6) (citing *Republic of Iraq v. Beaty,* —— U.S. ——, 129 S.Ct. 2183, 2194, 173 L.Ed.2d 1193 (2009)). The Supreme Court in *Beaty* distin-

There is nothing in the statutory text or structure of the NDAA to rebut this presumption.

> Section 1083(c)(2) applies to
>
> any action that—
>
> (i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) [not classified to the Code], before the date of the enactment of this Act [Jan. 28, 2008],
>
> (ii) **relied upon either such provision as creating a cause of action,**
>
> (iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and
>
> (iv) as of such date of enactment [Jan. 28, 2008], is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure,

National Defense Authorization Act (NDAA) for Fiscal Year 2008, Pub.L. No. 110–181 § 1083(c)(2)(A), 122 Stat. 3, 342

(emphasis added). Plaintiffs argue at length that their action meets the requirements of §§ 1083(c)(2)(i), (iii), and (iv). (*See generally* Pls.' Br. in Support of Mot. for Leave to Supplement the Fourth Am. Compl.). They gloss over the text of § 1083(c)(2)(A)(ii). As much as Plaintiffs—or this Court—might wish to disregard the language of § 1083(c)(2)(A)(ii), the Court must apply the statute as Congress has written it. Plaintiffs' action does not meet the standard set forth in § 1083(c)(2), because Plaintiffs never "relied upon [§ 1605(a)(7) ] as creating a cause of action." *Id.* § 1083(c)(2)(A)(ii). Plaintiffs filed their case on July 16, 2004, exactly six months after the D.C. Circuit held that "neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government." *Cicippio–Puleo v. Islamic Republic of Iran,* 353 F.3d 1024, 1033 (D.C.Cir. 2004). Presumably in response to this ruling, Plaintiffs did not rely upon § 1605(a)(7) in creating a cause of action in their initial Complaint or in any subsequent pleadings.[7] Consequently, they cannot refile their action under § 1083(c)(2).

---

guished, however, between laws which "merely alter the rules of foreign sovereign immunity" and those which "modify substantive rights." *Beaty,* 129 S.Ct. at 2194. Plaintiffs are seeking to retroactively enforce the substantive cause of action created by § 1605A(c), a provision which unquestionably "modif[ies] substantive rights." *Id.; see also Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483 (holding that where statute "would … increase a party's liability for past conduct," presumption against retroactivity applies). Thus, the presumption against retroactivity is triggered in this action. Even if this were not the case, however, the clear language of the NDAA would lead this Court to the same outcome. *See Simon v. Republic of Iraq,* 529 F.3d 1187, 1191 (D.C.Cir.2008), *rev'd on other grounds sub nom. Republic of Iraq v. Beaty,* —— U.S. ——, 129 S.Ct. 2183, 173 L.Ed.2d 1193 (2009) ("In this case, however, it is unnecessary to invoke either presumption be-

cause § 1083 makes several references to pending cases and we need not look beyond the text and structure of the NDAA to ascertain its effect upon cases brought under § 1605(a)(7).").

**7.** *See supra* Part I (listing Plaintiffs' asserted causes of action). The Court notes that "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier,* 238 F.3d 567, 572 (4th Cir.2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.,* 226 F.3d 160, 162 (2d Cir.2000)). Thus, even if Plaintiffs had asserted a cause of action under § 1605(a)(7) in their original Complaint, their subsequent amendments to the Complaint might still preclude them from refiling under § 1083(c)(2)(A)(ii). As Plaintiffs never relied on § 1605(a)(7), however, it is unnecessary to resolve this question.

In light of the Court's holding, it is not necessary to consider whether a retroactively applied claim for relief under § 1605A is a "new claim for relief" within the meaning of Federal Rule of Civil Procedure 5(a)(2). *Compare Gates v. Syrian Arab Republic,* 646 F.Supp.2d 79 (D.D.C. 2009) *with In re Islamic Republic of Iran Terrorism Litigation,* 659 F.Supp.2d 31 (D.D.C.2009). The plain language of § 1083(c)(2) is sufficient to guide this Court.

The Court further reserves ruling on the potential separation-of-powers issues lurking in § 1083. On the one hand, Congress has arguably used § 1083 to transfer the conduct of foreign affairs from the President to private litigants, in contravention of Article I. "Our Courts are here to uphold the rule of law and will not serve as ready accomplices in what appears as yet another political maneuver designed to make an end run around important international obligations." *In re Islamic Republic of Iran Terrorism Litigation,* 659 F.Supp.2d at 89–90 (discussing § 1605A(a)(2)(B)). On the other hand, to the extent that § 1083 requires federal courts to reopen final judgments, it undermines the independence of the Article III courts and the finality of their decisions. "The judiciary's independent authority to decide cases with finality protects against the risk that influential groups might use-indeed exploit-the legislative process to make an end run around civil judgments that they find adverse to their own personal interests or desires." *Id.* at 90. Although this case does not presently implicate the separation of powers contemplated by the United States Constitution, this Court remains mindful of its role in preserving the Founders' Constitutional vision.

## V. CONSTITUTIONALITY OF § 1083(C)(2)(A)(II)

■ Plaintiffs concede that the NDAA, "literally applied, would require dismissal because under § 1083(c)(2)[ (A) ](ii) prosecution of this action is precluded." (Pls.' Supp. Mem. In Supp. Of Mot. For Leave to Supp. The Fourth Am. Compl. 3). Plaintiffs argue, however, that the "distinction that is created by § 1083(c)(2)[ (A) ](ii) is arbitrary and serves no legitimate state purpose," and thus "it violates the guarantee of equal protection embodied in the Fifth Amendment." (*Id.* at 5). Because Plaintiffs are not members of a suspect class and do not allege a burden of any fundamental right, they must prove that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *In re Premier Automotive Servs., Inc.,* 492 F.3d 274, 283 (4th Cir. 2007) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

Before addressing Plaintiff's constitutional claim, it is important to identify with precision the statutory distinctions in question. Plaintiffs make the somewhat contradictory argument that § 1083(c)(2)(A)(ii) "preclud[es] them from seeking relief pursuant to § 1605A," while also claiming that "on dismissal, a new action can be filed under § 1083(c)(3)." In fact, Plaintiffs cannot logically have it both ways, and the statute does not draw the distinction they allege. Claims under § 1605A can be divided into three categories: New actions brought under § 1605A(c) itself ("Class One"), "Prior Actions" filed pursuant to § 1083(c)(2) ("Class Two"), and "Related Actions" brought under § 1083(c)(3) ("Class Three"). Although Plaintiffs are barred by statute from pursuing a claim in Class Two, there is little question that at the time of the NDAA's enactment, Plaintiffs

could have pursued a claim in Class Three. Plaintiffs were by no means precluded from seeking relief. If Plaintiffs are now precluded from bringing an action under § 1605A—a question on which the Court expresses no opinion—this is because they chose not to file an § 1083(c)(3) action within the time period set forth in § 1083(c)(3), not because the statute irrationally denied them this option.[8]

With a clear picture of the issues at stake, the Court now addresses Plaintiffs' Fifth Amendment claim and finds it to be without merit. As Plaintiffs correctly note, the same terrorist act can give rise to all three types of claims, depending on when and how a particular plaintiff files suit. Just because the factual predicate for all three types of claims is the same, however, does not mean that plaintiffs in the three classes are similarly situated. A plaintiff in Class Three, unlike a plaintiff in the other two classes, has had an opportunity to proceed to judgment under § 1606's pass-through provision. By definition, a plaintiff in Class One has not brought a previous action, and thus cannot have secured judgment. Similarly, to fall within Class Two, a plaintiff must have relied on § 1605(a)(7) as a cause of action and therefore cannot have succeed on her claims after the D.C. Circuit's decision in *Cicippio–Puleo.* Only a plaintiff in Class Three has had an opportunity to bring a successful claim against a state sponsor of terrorism. This distinction is amply illustrated by the present case, where some Plaintiffs have already secured a monetary judgment pursuant to DOHSA and had such judgment satisfied.

In light of the foregoing, Congress could rationally decide to grant plaintiffs in Class Two a right to amend their complaints, while denying a similar right to plaintiffs in Class Three. It is well-settled that Congress "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *see also United States v. Jones,* 735 F.2d 785 (4th Cir.1984) (upholding law imposing heightened liability on corporate coal mines); *Helton v. Hunt,* 330 F.3d 242, 246 (4th Cir.2003) (upholding grandfather clause in gambling machine ban). Congress could rationally conclude that plaintiffs who relied on 28 U.S.C. § 1605(a)(7) as creating a cause of action, and thus had their claims subject to dismissal under *Cicippio–Puleo,* would particularly benefit from the right to amend their complaint pursuant to § 1083(c)(2).

To approach the problem from a somewhat different perspective, Congress may have been concerned about the constitutional and procedural problems inherent in allowing plaintiffs who had already successfully proceeded to judgment to amend their complaint to add a new cause of action. Insofar as the NDAA is a Congressional order to reopen the final judgments of Article III courts, it is a statute raising grave constitutional questions. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 241, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (discussing Article III constraints on Congress' power to order the reopening of final judgments); *Lundeen v. Canadian Pacific R. Co.,* 532 F.3d 682, 702 (8th Cir.2008) (Congress violates the fundamental principle of the separation of powers when it retroactively commands the feder-

---

**8.** Plaintiffs assert that "on dismissal, a new action can be filed under § 1083(c)(3)." Plaintiffs assume that the "date of the entry of judgment in the original action" referenced in § 1083(c)(3)(A) will be the date of dismissal,

not the Court's entry of judgment in favor of Plaintiffs on November 16, 2007. The problem arises because the Plaintiffs with money judgments have already collected and satisfied that judgment.

al courts to reopen final judgments); *but see In re Islamic Republic of Iran Terrorism Litigation,* 659 F.Supp.2d 31 (D.D.C. 2009) (rejecting separation-of-powers challenge to the NDAA). For plaintiffs in Class Three, however, these problems take on an added dimension. As in the present case, a plaintiff in Class Three may already have secured and collected upon a judgment in her favor. Must the district court vacate this prior judgment, order a return of all monies collected by the plaintiff, and only then allow the plaintiff to proceed under § 1605A? Would such a procedure violate Article III, the Due Process Clause, or any other constitutional provision?

Faced with these difficult questions, Congress could rationally have decided against allowing plaintiffs in Class Three to amend their complaints. Congress could have made an equally rational decision to direct plaintiffs in Class Three to bring their § 1605A claims through a newly filed "Related Action," a procedure that presents entirely different constitutional questions. *See Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 811–12 (11th Cir.1988) (discussing Congress' power to waive *res judicata* effect of judgment in favor of private parties).

The Court again emphasizes that the NDAA is not a statute that "discriminates against Plaintiffs by precluding them from seeking relief pursuant to § 1605A." Plaintiffs were merely required to pursue their claims under § 1083(c)(3), rather than § 1083(c)(2). As the foregoing discussion demonstrates, Congress had ample reason to establish these distinct procedural avenues.

## VI. CONCLUSION

Pursuant to § 1083(c)(2), the Court must deny Plaintiffs' Motion for Leave to Supplement the Fourth Amended Complaint. The Court emphasizes the narrowness of its holding. In denying Plaintiffs' motion to amend their complaint pursuant to § 1083(c)(2), the Court expresses no opinion on Plaintiffs' other possible remedies, including the filing of a "related action" under § 1083(c)(3). *Cf. Bodoff v. Islamic Republic of Iran,* Civ. No. 08–547, 2008 WL 2062474 (D.D.C. filed Mar. 28, 2008) ("related action" filed against Iran under § 1083(c)(3) after Plaintiffs' motion to amend original complaint denied).

In a prior ruling, this Court remarked that it is a "tragedy that the laws of the United States, in this instance, provide no remedy for the psychological and emotional losses suffered by the survivors." *Rux v. Republic of Sudan,* 495 F.Supp.2d 541, 569 (E.D.Va.2007). Although Congress has taken steps toward providing such relief for the victims of terrorism, Congress chose not to extend the remedy in § 1605A to Plaintiffs' pending case. It remains a tragedy that Plaintiffs, who have suffered losses as a result of Sudan's malicious actions, still await compensation for their psychological and emotional losses. But the Court is bound by the laws Congress has written.

For the reasons set forth herein, the Court finds that Plaintiffs cannot amend their Complaint to add a cause of action pursuant to § 1605A. The Court must answer the Fourth Circuit's mandate in the negative. Under these circumstances, § 1605A does not supersede DOHSA as a cause of action, because § 1605A is simply not applicable.

Plaintiffs' Motion for Leave to Supplement Their Fourth Amended Complaint is **DENIED.** The Clerk of Court is **DIRECTED** to transmit a copy of this Order to all counsel of record via United States mail.

**IT IS SO ORDERED.**