Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 28, 2004          Decided November 23, 2004

No. 03-7095

MICHAEL H. PRICE AND ROGER K. FREY,
APPELLEES

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 97cv00975)

*Arman Dabiri* argued the cause and filed the briefs for appellant.

*Andrew C. Hall* argued the cause for appellees. With him on the brief were *James Cooper–Hill* and *Nelson M. Jones.*

*Stuart H. Newberger* argued the cause for *amicus curiae* Blake Kilburn, et al. in support of appellees. With him on

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

the brief were *Clifton S. Elgarten, Michael L. Martinez*, and *F. Ryan Keith. Laurel P. Malson* entered an appearance.

Before: GINSBURG, *Chief Judge*, and EDWARDS and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Michael Price and Roger Frey sued the Socialist People's Libyan Arab Jamahiriya, better known as Libya, pursuant to the terrorism exception to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(7), alleging various causes of action arising from their detention in that country in 1980. The district court denied Libya's motion to dismiss and Libya appeals, arguing that (1) sovereign immunity protects it from suit because the plaintiffs, in depositions in another case, contradicted key allegations in their complaint here, and in any event (2) Price and Frey have not stated a cause of action.

We conclude the facts recited in the amended complaint are, notwithstanding possible tension between them and the story told in the depositions, sufficient under the terrorism exception to the FSIA to divest Libya of its immunity from suit. We do not reach the question whether the complaint states a cause of action because doing so would require us to exercise pendent appellate jurisdiction, for which there is no basis in this case.

## I. Background

In 1997 Price and Frey sued Libya, seeking $40 million in damages for hostage taking and torture, which acts they argued divested Libya of its immunity pursuant to the terrorism exception to the FSIA. Neither party disputes that in March, 1980 Price and Frey, American citizens working in Libya for a Libyan company, were arrested in Libya and charged with taking photographs for an illegal purpose. Price and Frey were eventually tried and acquitted of the charge of taking illegal photographs and later were permitted to leave Libya. Beyond these basic facts, however, it seems the plaintiffs and Libya, which has not yet had an opportunity

fully to tell its side of the story, differ as to many important details of the plaintiffs' detention and trial.

Price and Frey maintained in their original complaint that they were "incarcerated in prison in Tripoli for . . . 105 days," during which time they were subject to "physical, mental and verbal abuse," including being "[p]rovided inadequate food," "denied any dental care," "given a urine soaked mattress on which to sleep," and "kicked, clubbed and beaten by the prison guards." The complaint also stated Libyan officials informed the plaintiffs their incarceration "was the for the purpose of demonstrating [Libya's] support for the government of Iran which held hostages in the U.S. embassy in Teheran."

Libya moved to dismiss the plaintiffs' complaint, contending: (1) the FSIA is unconstitutional insofar as it delegates to the Executive Branch legislative authority to determine which countries are amenable to suit under § 1605(a)(7); (2) the court's exercise of personal jurisdiction over Libya would violate that nation's right to due process; and (3) the plaintiffs failed to state a claim upon which relief could be granted. The district court denied Libya's motion, *see Price v. Socialist People's Libyan Arab Jamahiriya*, 110 F. Supp. 2d 10 (D.D.C. 2000), and Libya pursued an interlocutory appeal, which we decided in 2002. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (*Price II*).

After analyzing the "stringent definition" of "torture" in the terrorism exception to the FSIA, we observed that the plaintiffs' complaint "offer[ed] no useful details about the nature of the . . . beatings [they] allegedly suffered" and said "virtually nothing about the purpose of the alleged torture." *Id.* at 93–94. Accordingly, we remanded the matter to the district court "to allow plaintiffs to attempt to amend their complaint" so as to bring their claim within the terrorism exception. *Id.* at 94. We also held the claim for "hostage taking" should have been dismissed because "even when read most favorably to [the plaintiffs] . . . [the] complaint point[ed] to no nexus between what happened to [the plaintiffs] in Libya and any

concrete concession that Libya may have hoped to extract from the outside world." *Id.* at 94.

On remand the district court granted the plaintiffs' motion to amend the complaint. As amended, the complaint makes several new factual allegations pertinent to this appeal, including that during "months of incarceration" the plaintiffs experienced repeated "extrajudicial acts of torture," including "continuous[ ] and intentional[ ]" beatings and threats of "severe physical pain" and of "imminent death." The amended complaint further alleges the plaintiffs were "forced to watch either a beating or a killing of a fellow prisoner for the purposes of forcing [them] to confess to being spies," and that they were visited by an attorney who told them "they would likely receive the death penalty for spying if they did not confess." Once again Libya moved to dismiss, this time arguing: (1) our decision in *Price II* had foreclosed consideration of the claim for hostage taking; (2) the district court lacked subject matter jurisdiction because key allegations in the amended complaint were contradicted by depositions the plaintiffs filed in the case they had brought in New York against the company that had employed them in Libya; and (3) the Flatow Amendment, 28 U.S.C. § 1605 (note), a source of substantive law invoked in the amended complaint, does not create a cause of action against a foreign state.

After a hearing the district court granted Libya's motion to dismiss the claim for hostage taking. *Price v. Socialist People's Libyan Arab Jamahiriya*, 274 F. Supp. 2d 20, 22–23 (D.D.C. 2003) (*Price III*). With regard to subject matter jurisdiction, however, the court — applying our instruction in *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36 (2000), to go beyond the pleadings insofar as necessary to resolve disputed facts bearing upon a foreign sovereign's immunity — held the amended complaint stated a cause of action for mental torture within the terrorism exception to the FSIA. *Price III*, 274 F. Supp. 2d at 25–26. Finally, the district court ruled that the Flatow Amendment, in conjunction with the terrorism exception, created a cause of action against a foreign state. *Id.* at 27–29. Again, Libya filed an interlocutory appeal.

## II. Analysis

Libya makes two alternative arguments. First, Libya contends the district court lacks subject matter jurisdiction because the factual allegations of the amended complaint were discredited by inconsistent statements in the plaintiffs' New York depositions. Second, Libya argues the plaintiffs failed to state a claim upon which relief can be granted because, after the district court issued its decision, we held in *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (2004), that the Flatow Amendment does not create a cause of action against a foreign state.

### A. Subject Matter Jurisdiction

Before considering Libya's contention that the district court lacks jurisdiction, we begin with a word about our own. Although 28 U.S.C. § 1291 limits this court's review to "final decisions of the district court," under the collateral order doctrine a decision of the district court is deemed "final," and therefore reviewable, if it: "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Further, "[i]t is well-established that an appeal from a denial of a motion to dismiss a complaint on the ground of sovereign immunity under the FSIA satisfies the three requirements of the collateral order doctrine." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1025 (D.C. Cir. 1997); *see Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004). Thus do we have jurisdiction over Libya's appeal contending that sovereign immunity shields it from this suit.

The jurisdiction of the district court, in contrast, is governed by the FSIA itself: A foreign state is immune from suit in both federal and state courts, 28 U.S.C. § 1604, unless the case comes within an express exception in the FSIA, *id.* § 1605. "If no exception applies, a foreign sovereign's immunity under the FSIA is complete: The district court lacks

subject matter jurisdiction over the plaintiff's case." *Phoenix Consulting*, 216 F.3d at 39.

The Congress, by § 221(a) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, 1241–42 (Apr. 24, 1996), added to the FSIA a "terrorism exception," which denies sovereign immunity in any case

> in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605(a)(7). As in *Kilburn*, the question in this case is whether the plaintiffs' claims "fall within . . . the exception, upon which the jurisdiction of the district court depends." 376 F.3d at 1127.

Application of this exception entails the reconciliation of two rival propositions. On the one hand, because a foreign sovereign "has immunity from trial and the attendant burdens of litigation," its claim of immunity from suit should be resolved "as early in the litigation as possible," *Phoenix Consulting*, 216 F.3d at 39, lest the purpose to be served by sovereign immunity be unduly compromised. On the other hand, a court is poorly equipped to resolve factual disputes at an early stage in a litigation — as reflected in the ordinary rules of procedure. *See, e.g.*, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999) (when judging a motion to dismiss under Rule 12(b)(6) a court should "accept the allegations contained in [the] complaint as true for purposes of [the] case").

In *Phoenix Consulting* we explained how we reconcile these propositions: When a foreign sovereign disputes the fact(s) upon which the district court's subject matter jurisdiction depend(s), the court "must go beyond the pleadings and

resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." 216 F.3d at 40. This resolution, of course, is "not a conclusive determination" but is "instead subject to change in light of further development of the facts." *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1188 (D.C. Cir. 2003). And, as we later observed, the district court "retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Kilburn*, 376 F.3d at 1131. Regardless of the procedures the court follows, however, the sovereign "defendant bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity." *Phoenix Consulting*, 216 F.3d at 40.

The parties to this case agree upon these basic principles but they skirmish over the standard of review that guides our inquiry. Libya points to *Price II*, where we explained that we review *de novo* a district court's determination whether alleged facts "[bring] the case within any of the exceptions to immunity invoked by the plaintiff." 294 F.3d at 91. The plaintiffs, in turn, direct us to decisions in which we said we "review *de novo* the district court's determination that a [foreign sovereign] is not entitled to immunity" while we "review the district court's findings of fact for clear error." *Transamerica Leasing, Inc. v. La Republica De Venezuela*, 200 F.3d 843, 847 (D.C. Cir. 2000); *see, e.g.*, *Jungquist*, 115 F.3d at 1028. There is no inconsistency, however, in our precedents: The cases cited by the plaintiffs announce the unsurprising proposition that we review the district court's findings of fact — including facts that bear upon immunity and therefore upon jurisdiction — for clear error; hence, we went on in *Price II* to state that, once the facts have been settled, we decide *de novo* whether those facts are sufficient to divest the foreign sovereign of its immunity. 294 F.3d at 91. In this case, the legal issue we review *de novo* is whether the allegations in the amended complaint, viewed in light of the contradictions to which Libya points, are still sufficient to divest Libya of immunity from suit. *See, e.g.*, *Kilburn*, 376 F.3d at 1131–33 (reviewing *de novo* whether contradictions between allegations in complaint and facts recited in CIA and

State Department documents sufficed to carry Libya's burden of proving conduct fell outside terrorism exception to FSIA).

Libya points to three areas of arguable incongruity between the amended complaint and the New York depositions; none persuades us the district court erred. First, the claim in the amended complaint that Hassan Ben Younis interrogated Price and Frey "on or about March 20" and accused them of being spies is not inconsistent with Frey's testimony in his New York deposition that the prosecutor who interrogated him on March 20 "was not Ben Younis" and, whoever it was, charged him only with taking illegal photographs. The two accounts are reconciled if Price and Frey were interrogated by Ben Younis "about" but not "on" March 20.

Second, Libya contends Price and Frey have given two irreconcilable accounts of their meeting with Mr. Duabi, the Libyan lawyer assigned to advise them. In his New York deposition Frey testified that Mr. Duabi smuggled a note from the imprisoned plaintiffs to their employer. In the amended complaint the plaintiffs allege Mr. Duabi told them they would receive the death penalty if they did not confess. Libya claims that both accounts cannot be true: "It is absurd to assert that Mr. Duabi was an agent of Libya trying to force Price and Frey to sign a false confession while at the same time smuggling papers out to their employers." We agree with the plaintiffs, however, it is entirely possible both accounts are correct — that is, the lawyer smuggled the note but warned the plaintiffs of dire consequences if they did not confess.

Finally, Libya suggests the amended complaint and the New York depositions contain contradictory accounts of the events of April 30. Specifically, Libya argues Frey's deposition testimony that he was not charged with espionage or spying activities while being interrogated on April 30 "directly contradicts and proves false" the allegation in the amended complaint that "[o]n or about" April 30 both plaintiffs were threatened with beatings if they did not confess to being spies. Although the plaintiffs may encounter difficulty at trial reconciling these accounts, the two versions are not

hopelessly inconsistent. It is possible the interrogation "on or about" April 30 described in the amended complaint is not the same as the interrogation described in the New York depositions. Libya has not pointed to anything in the New York depositions that would preclude this possibility. Further, as the plaintiffs point out, the questions put to Frey at his deposition, upon the answers to which Libya relies, related only to the formal process of arraignment, and at the arraignment he was not charged with spying.

In all three respects Libya has done little more than highlight small variations between the facts as described in the plaintiffs' action of more than two decades ago against a non-sovereign defendant and the facts as described in the amended complaint against Libya. Such slight support cannot carry the defendant's "burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity." *Phoenix Consulting*, 216 F.3d at 40.

Libya has failed to carry its burden of proof not only because it has not identified any true contradictions to undermine the credibility of the amended complaint but also because it does not dispute some of the most serious allegations in that complaint. *See Kilburn*, 376 F.3d at 1132 (Libya satisfied neither burden of proof nor burden of production by pointing to alleged contradictions between complaint and government documents but proffering no "affirmative evidence" conduct was not within terrorism exception to FSIA). As the district court noted, Libya did nothing to contest the allegations that

> on three separate occasions, plaintiffs were bound and forced to watch as another prisoner was beaten [and] on each of these occasions, the head of the prison informed them that if they did not sign a confession that they were American spies, they would receive the same treatment that they were witnessing.

*Price III*, 274 F. Supp. 2d at 25. Having failed to impugn the plaintiffs' credibility based upon irreconcilable differences between their amended complaint and their prior testimony,

Libya cannot remain silent in the face of these allegations and still be said to have carried its burden of showing this case does not come within the subject matter jurisdiction of the district court via the terrorism exception to the FSIA. *See Price II*, 294 F.3d at 93 ("When reviewing a plaintiff's unchallenged factual allegations to determine whether they are sufficient to deprive a foreign state defendant of sovereign immunity, we assume those allegations to be true").

In short Libya has not exposed any contradiction that renders the facts stated in the amended complaint insufficient to deprive the defendant of its immunity from suit. The district court therefore correctly denied Libya's motion to dismiss for lack of jurisdiction.

B.   Motion to Dismiss

Libya next argues the district court erred in denying its Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted because this circuit recently held, contrary to the district court, *see Price III*, 274 F. Supp. 2d at 27, that the Flatow Amendment does not "creat[e] a private right of action against a foreign government." *Cicippio-Puelo*, 353 F.3d at 1033. Although Libya advances an uncontroversial reading of our decision, it does not follow apodictically that this court should grant Libya the relief it requests: "Denial of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is not ordinarily subject to interlocutory appeal. It is neither a final decision nor a proper subject for appeal under the collateral order doctrine." *Kilburn*, 376 F.3d at 1133.

Libya does not appear to disagree; rather, as in *Kilburn*, Libya "urges us to assume jurisdiction over the non-immunity issues as 'pendent' to the sovereign immunity decision over which we have interlocutory jurisdiction." *Id.* Libya also relies upon *Acree v. Republic of Iraq* 370 F.3d 41, 59 (D.C. Cir. 2004), in which we held "generic common law cannot be the *source* of a federal cause of action." *Acree*, however, was not a case in which we exercised pendent appellate jurisdiction, so it has no bearing upon the issue now before us.

"A circuit court exercises pendent jurisdiction when, in the course of reviewing an order from which an appeal is within its jurisdiction, it hears an appeal from another order that, while part of the same case or controversy, would not otherwise be within its statutory jurisdiction." *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 678 (D.C. Cir. 1996). The exercise of pendent appellate jurisdiction is often suggested, occasionally tempting, but only rarely appropriate. Because "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets," *Swint v. Chambers County Comm'n*, 514 U.S. 35, 49–50 (1995), "[t]his court exercises pendent appellate jurisdiction sparingly," *Gilda Marx*, 85 F.3d at 678–79, indeed only when review of the pendent matter is necessary "to ensure meaningful review" of or "inextricably intertwined with" the order properly before the court. *Nat'l R.R. Passenger Corp. v. Expresstrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003).

Neither of these considerations favors the exercise of pendent jurisdiction in this case. The amended complaint advances many theories of liability, including claims under not only the Flatow Amendment but also under state common law, some general and several specific sources of international law, the Torture Victims Protection Act of 1991, and § 1003 of the Federal Courts Administration Act of 1992 (codified at 18 U.S.C. § 2333(a)). In *Kilburn*, we explained "whether state tort law properly provides the plaintiff with a cause of action . . . is not inextricably linked with, or necessary for meaningful review of, the proper scope of jurisdictional causation under § 1605(a)(7)" of the FSIA. *Kilburn*, 376 F.3d at 1134. Likewise, the question whether any of the sources of law invoked in the amended complaint provides the plaintiffs with a cause of action is not inextricably linked with, or necessary for meaningful review of, the only question before us as of right, namely, the sufficiency of the facts to support the court's jurisdiction under the terrorism exception to the FSIA, § 1605(a)(7).

### III. Conclusion

For the foregoing reasons, the district court's denial of Libya's motion to dismiss for want of jurisdiction is

*Affirmed.*