# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 19, 2010         Decided May 20, 2011

No. 08-7118

FRANCIS GATES, INDIVIDUALLY AND AS ADMINISTRATOR OF
THE ESTATE OF OLIN EUGENE "JACK" ARMSTRONG, JR., ET AL.,
APPELLEES

v.

SYRIAN ARAB REPUBLIC, ET AL.,
APPELLANTS

———

Consolidated with 09-7108

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-01500)

———

*Ramsey Clark* argued the cause for appellants. With him
on the briefs was *Lawrence W. Schilling*.

*John F. Salter Jr.* argued the cause for appellees. With him on the brief were *Steven R. Perles* and *Edward B. MacAllister*.

Before: ROGERS and BROWN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: This case arises from gruesome and memorable facts. The issues presented on appeal, however, are more mundane. The families of two American contractors beheaded by terrorists in Iraq sued the Syrian Arab Republic ("Syria") in federal court. Syria did not respond, and the district court eventually entered default judgment in favor of the contractors' families. Thereafter, Syria finally appeared and filed a Rule 60(b) motion seeking to vacate the default judgment, citing several procedural, constitutional, and jurisdictional defects. *See* Fed. R. Civ. P. 60(b) (stating the "Grounds for Relief from a Final Judgment, Order, or Proceeding.") We find none to have merit.

I

Olin Armstrong and Jack Hensley were contractors providing technical and operational assistance to the U.S. military in Iraq. They were kidnapped, held hostage, and finally, while their captors videotaped the event, viciously slaughtered. Video of the executioner, Abu Mus'ab al-Zarqawi, decapitating his victims was circulated on the internet. Al-Zarqawi, and his terrorist organization, al-Tawhid wal-Jihad (known as al-Qaeda in Iraq) claimed responsibility for the murders. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 56, 58 (D.D.C. 2008) (citing U.S. Dep't of State, Office of the Coordinator for

Counterterrorism, *Country Reports on Terrorism 2005* 220 (2006)).

The families of Hensley and Armstrong (collectively, "the Families") brought state law claims against Syria, Syrian Military Intelligence, President Bashar al-Assad, and Director of Military Intelligence Asif Shawkat, under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*[1] The Families alleged, in part, that Syria provided material support to both Zarqawi and al-Qaeda, facilitating the deaths of Hensley and Armstrong. Syria did not respond or otherwise enter an appearance in court. As a result, the Clerk of the Court entered a procedural default against Syria and the district court subsequently held a three-day evidentiary hearing to determine whether the Families could establish their claims "by evidence satisfactory to the court." 28 U.S.C. § 1608(e) (providing protections for foreign states against procedural defaults).

The FSIA provides immunity to foreign states from the jurisdiction of United States courts. 28 U.S.C. § 1604. Sections 1605 through 1607 waive this immunity when, *inter alia*, the foreign state provides material support for hostage taking or is designated a state sponsor of terrorism. *Id.* ("[F]oreign state[s] shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."). Syria has been designated a state sponsor of terrorism since 1979.

---

[1] The Syrian Military Intelligence and the individual defendants are considered part of the state itself under the FSIA. *See* 28 U.S.C. § 1603(a), (b); *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033–34 (D.C. Cir. 2004), *superseded by statute*, 28 U.S.C. § 1605A; *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).

When the Families initiated this suit, § 1605(a)(7) of the FSIA created a federal "judicial forum for the compensation of victims and the punishment of terrorist states." *Cicippio-Puleo*, 353 F.3d at 1033; *see also id.* at 1027 ("Section 1605(a)(7) [of the FSIA] merely waives the immunity of a foreign state without creating a cause of action against it . . . ."). In addition, § 1606 exempted foreign states from liability for potential punitive damages. *See* 28 U.S.C. § 1606.

Three weeks after the evidentiary hearing, but before the district court issued its opinion, Congress passed, and the President signed into law, the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. No. 110–181, 122 Stat. 3 (2008). Section 1083(a) of the NDAA amended the FSIA by repealing § 1605(a)(7), and adding a new provision, § 1605A, in its stead. Unlike its predecessor, § 1605A creates a federal rule of decision against foreign states and provides for punitive damages. *See Simon v. Republic of Iraq¸* 529 F.3d 1187, 1190 (D.C. Cir. 2008), *rev'd on other grounds sub nom.*, *Republic of Iraq v. Beaty*, 129 S.Ct. 2183 (2009), (noting § 1083(a) of the NDAA also abrogated *Cicippio-Puleo*, 353 F.3d 1024). In addition, new § 1605A may apply to "pending cases" initially brought under § 1605(a)(7) "on motion made" under NDAA section 1083(c)(2). Pub. L. 110-181, § 1083(c)(2)(A), 122 Stat. at 342–43 (stating that an action brought under § 1605(a)(7) must "be given effect as if the action had originally been filed under § 1605A of title 28, United States Code.")

In February, 2008, the Families moved to proceed under § 1605A, arguing their federal claim for relief was "the same as the claim for relief previously asserted and served upon Defendants, except for the ministerial substitution by

Congress of 1605A in place of 1605(a)(7)." *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 89 (D.D.C. 2009) (quoting Pls.' motion to proceed under new statute). Syria again failed to respond. The district court granted the Families' motion, holding that new service of process was not necessary ("Conversion Order"). Order Granting Motion for Leave to Proceed under Pub. L. 110-181, Feb. 27, 2008, *Gates v. Syrian Arab Republic*, (No. 06-1500), *reprinted at* J.A. 245. Then, on September 26, 2008, the district court granted default judgment in favor of the Families, awarding damages in excess of $400 million ("Default Judgment Order"). *Gates*, 580 F. Supp. 2d at 75. In so doing, the district court found service of process perfected against Syria under 28 U.S.C. § 1608(a), which governs service on foreign states. *Id.* at 64.

Syria appealed the district court's Default Judgment Order, arguing the Families did not effectuate service of process and the district court lacked jurisdiction. Rather than remand the case, this court placed Syria's appeal in abeyance, "pending the district court's decision whether it intends to vacate the default judgment or otherwise grant relief." *See* Dist. Ct. Docket No. 64 (citing *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991)).

Thereafter, Syria filed a motion in the district court seeking relief from judgment under Rule 60(b). Syria asked the district court to set aside its Default Judgment Order because it was void, *see* Fed. R. Civ. P. 60(b)(4), and for other reasons justifying relief, *see* Fed. R. Civ. P. 60(b)(6). Interpreting its jurisdiction to be limited under *Hoai*, 935 F.2d at 312,[2] the district court denied Syria's motion under Rule

---

[2] In *Hoai*, this court noted when a Rule 60(b) motion and an appeal are pending at the same time—as is the case here—"the District

60(b)(4), but indicated it would vacate the Conversion Order and amend its Default Judgment Order if it had jurisdiction to do so. *See Gates,* 646 F. Supp. 2d at 83–84, 91 ("Rule 60(b) Order"). Under this proposed disposition, the Families could proceed under former § 1605(a)(7), which did not provide for punitive damages, rather than under new § 1605A. *Id.* at 91.

On appeal, Syria makes a multitude of arguments. For example, Syria argues this court lacks jurisdiction because the FSIA conflicts with Article 2 of the U.N. Charter, international laws, and international norms. Syria also argues the case is a non-justiciable political question. These arguments are specious and clearly resolved by this court's prior cases, including some that involved Syria and its counsel. *See Wyatt v. Syrian Arab Republic*, 266 F. App'x 1 (D.C. Cir. 2008); *Simon*, 529 F.3d 1187. Similarly, Syria argues the FSIA is unconstitutional because future acts of Congress or the President may impair any final judgment in this case in violation of separation of powers principles. [Blue 64–73.] Precedent forecloses this argument as well. Syria's constitutional claim is not ripe because neither Congress nor the President has invalidated, retroactively, a judgment in this case. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). In any event, the FSIA does not vest authority in the President to review the judgments of federal

---

Court may consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted." 935 F.2d at 312 (citing *Reuber v. United States*, 750 F.2d 1039, 1051 n.16 (D.C. Cir. 1984) (as amended Jan. 23, 1985)).

courts. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995).

Only two arguments require our attention. Syria argues the district court's Rule 60(b) Order was in error, and its Default Judgment Order void, because Syria never received service of process. Further, Syria contends remand is appropriate to give the district court "opportunity to grant further relief to Syria as the district court indicated it would do," *i.e.*, vacate the Conversion Order and require the Families to proceed under former § 1605(a)(7), rather than new § 1605A.

II

Section 1608 of the FSIA governs service of process "upon a foreign state." 28 U.S.C. § 1608. That section states, in pertinent part, that service may be made "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." *Id.* § 1608(a)(3).

Syria does not dispute the Families initiated service through the clerk of the court as required by § 1608(a)(3). Nor does Syria dispute the clerk of court addressed and dispatched copies of the summons, complaint, notice of suit, and translations thereof to the Syrian Ministry of Foreign Affairs. Syria simply argues it did not receive the package because DHL, the mail carrier employed by the clerk, did not deliver it. [Blue 12–18.] The district court found otherwise, and we review that finding for clear error. *See Price v.*

*Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197–98 (D.C. Cir. 2004).

In determining whether Syria received service of process, the district court relied on a letter DHL sent to the Families' counsel, Edward Macallister. *See* Letter from Jay Bitsuc, Shipment Inquiry Research Specialist, DHL Express, to Edward MacAllister (Nov. 13, 2006), *reprinted at* J.A. 114. The letter states that DHL traced the package mailed by the clerk of court and found it "was delivered to the consignee on October 30, 2006 at 10:27 A.M. signed for by ESAM." *Id.* DHL attached to the letter a copy of a delivery log indicating delivery of the same Airbill completed by the clerk of court. *Id.*, *reprinted at* J.A. 115. Syria presented no contrary evidence to the district court, choosing instead to rely upon counsel's contrary statement of fact. But Syria's factual argument—that the DHL letter is a fraud—is speculative. Neither the lack of intermittent tracking information, nor the four-day processing delay between Macallister's request for information and DHL's letter in response, suggest the DHL letter is a fabrication. Further, Syria's legal argument—asserting the district court improperly allocated the parties' respective burdens under sovereign immunity law and principles of fairness—is wrong. Under Rule 60(b), "the party seeking to invoke [Rule 60(b)] bears the burden of establishing that its prerequisites are satisfied." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002); *see also "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 126 (2d Cir. 2008); *In re Worldwide Web Sys. Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003); *United States v. Western Elec. Co., Inc.*, 46 F.3d 1198, 1204 (D.C. Cir. 1995) (describing the burden of party seeking relief under Rule 60(b) as a "heavy" one). Moreover, because Syria is not immune under the FSIA, no principle of sovereign immunity law upsets the parties' respective burdens under Rule 60(b);

nor do oft cited ephemeral principles of fairness, whatever those principles may suggest in any given context, abstract or concrete. The district court did not clearly err in finding that Syria received service of process under the FSIA.

III

In its Rule 60(b) Order, the district court indicated it would grant other relief to Syria "appropriate to accomplish justice." *Gates*, 646 F. Supp. 2d at 91 (citing *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)). Notably, the district court would vacate the Conversion Order and amend the Default Judgment Order accordingly. *Id.* The Families' § 1605A claim presented a "new claim for relief," the district court reasoned, and therefore required new service of process, which the Families did not provide Syria in this case. *Gates*¸ 646 F. Supp. 2d. at 89–91 (citing Fed. R. Civ. P. 5(a)(2) (requiring new services of process for "a pleading that asserts a new claim for relief . . . ")). Syria agrees remand is appropriate on this basis. Whether or not claims converted under section 1083 of the NDAA are "new claims" requiring new service of process is a question of law we review *de novo*. *See Price*, 389 F.3d at 197.

The plain language of the NDAA indicates a claim converted under section 1083(c)(2) is not a "new claim for relief." The relevant text states:

> With respect to any action that: . . . was brought under section 1605(a)(7) . . . before the date of the enactment of [§ 1605A], . . . and . . . is before the courts in any form, including on appeal or motion under Rule 60(b) of the Federal Rules of Civil Procedure, that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where

> the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605(a)(7) of title 28, United States Code.

Pub. Law 110-181, § 1083(c)(2)(A), 122 Stat. at 342–43. First, new claims must be asserted in *pleadings*. *See* Fed. R. Civ. P. 8(a). But section 1083 allows for conversion "on *motion* made." A motion is not a pleading. Indeed, Rule 7(b) describes a "motion" as "a request for an order" and Rule 7(a) does not include a "motion" in its list of documents considered "pleadings." *See* Fed. R. Civ. P. 7(a) (listing documents considered pleadings). Second, the statute requires a converted action to "be given effect as if the action had originally been filed under § 1605(a)(7)." NDAA § 1083(c)(2)(A). Treating a converted action as a new claim would undermine this statutory language because it would treat the claim as if it were originally filed under § 1605A, not § 1605(a)(7). Third, section 1083 allows for conversion "on appeal." But *pleadings* cannot be amended on appeal. *See* Fed. R. Civ. P. 15(a). Thus, the statutory language suggests the converted claim is not a "new claim" requiring an amended pleading. Finally, § 1605A changes the applicable rule of decision, it does not create a new cause of action. Section 1605A provides for a federal cause of action, whereas § 1605(a)(7) relied upon state law claims. Both sound in tort, however. And both claims arise from the same underlying acts of terrorism. It is therefore the applicable rule of decision that is new when an action is converted under section 1083, not the claim itself.

The district court did not address the text of the NDAA, because it assumed the Families' § 1605A claim "should have been served on Syria" even if the Families otherwise met the statutory requirements to convert their claim. *Gates*, 646 F.

Supp. 2d at 90 (Rule 60(b) Order). *But see* Conversion Order (granting the Families motion to convert under section 1083 of the NDAA and noting further service of process "is not required"). In so doing, the district court relied upon Rule 5(a)(2), which requires that "a new claim for relief must be served." *Gates*, 646 F. Supp. 2d at 91. But this analysis misses the point. The FSIA provides special rules for service of process on foreign states and therefore the applicability of Rule 5(a)(2) in this context is dubious. *See Edmond v. U.S.¸* 520 U.S. 651, 657 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs."). In any event, Rule 5(a)(2) applies to "a pleading" and not to a "motion made," as prescribed by section 1083 of the NDAA.

## IV

The Families adequately effected service of process against Syria when they first filed suit under former § 1605(a)(7) of the FSIA. Before the district court entered judgment, the Families moved to convert their action and proceed under new § 1605A in accordance with section 1083 of the NDAA. Under section 1083 of the NDAA, the Families did not have to serve Syria anew, because the statutory text does not treat converted claims as new claims for relief. In addition, Rule 5(a)(2) does not apply in this case, given the FSIA's specific statutory service of process provision. As a result, there is no need to remand this case for the district court to grant Syria other relief. The judgment of the district court denying Syria's motion under Rule 60(b)(4) is

*Affirmed.*