# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 21-7070**

**September Term, 2021**

FILED ON: JULY 22, 2022

CAPITALKEYS, LLC,
>    APPELLANT

v.

DEMOCRATIC REPUBLIC OF CONGO AND CENTRAL BANK OF THE DEMOCRATIC REPUBLIC OF THE CONGO,
>    APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02079)

Before: TATEL[*], WILKINS and RAO, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record, briefs, and oral arguments of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* FED R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons set out below, it is

**ORDERED AND ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

CapitalKeys, LLC ("CapitalKeys"), a public affairs firm based in Washington, D.C., sued the Democratic Republic of the Congo ("the DRC") and the Central Bank of the Democratic Republic of Congo ("the Central Bank," and collectively, "Appellees") for breach of contract and other related claims. According to CapitalKeys, its President, Adam Falkoff, executed an agreement with then-outgoing Governor of the Central Bank, Jean-Claude Masangu Mulongo. The Agreement stipulated that Appellees would pay Appellant $16.6 million in exchange for services including "government relations and strategic communications," to be completed over the course of five years. Appellant Opening Br. 10; *CapitalKeys, LLC v. Democratic Republic of Congo*, No. 15-CV-2079, 2021 WL 2255362, at *1 (D.D.C. June 3, 2021). In addition, the Agreement provided that it would be governed by "the laws of the District of Columbia . . . and a court in said

---

[*]Judge Tatel assumed senior status after this case was argued and before the date of this judgment.

place shall be the exclusive location for any suit or proceeding relating to this Agreement." J.A. 35. Just such a suit arose two years into the contract when neither the DRC nor the Central Bank had paid, prompting CapitalKeys to attempt to retrieve what it believed it was owed via the District Court. Part of its attempt, however, required CapitalKeys to prove that Appellees, two foreign entities "presumptively immune from the jurisdiction of United States courts," had waived their sovereign immunity. *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 707 (2021).

The District Court concluded that CapitalKeys failed to do so and granted the Central Bank's motion to dismiss the complaint for lack of subject matter jurisdiction over either the Central Bank or the DRC, *see* FED. R. CIV. P. 12(b)(1), despite the DRC's failure to appear at any stage of this litigation. *CapitalKeys, LLC*, 2021 WL 2255362, at *20–21; *see Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983) ("[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the [Foreign Sovereign Immunities Act]."). We affirm its decision.

The Foreign Sovereign Immunities Act ("FSIA") provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under FSIA, foreign states or "a political subdivision . . . or an agency or instrumentality of a foreign state," 28 U.S.C. § 1603(a), are jurisdictionally immune unless "the plaintiff's claim[s] fall[] within a statutorily enumerated exception" upon which a district court has subject matter jurisdiction. *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 34 (D.C. Cir. 2014). CapitalKeys bears the burden of producing evidence that an exception applies, *see Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013), and must do so for both the DRC and the Central Bank. To that end, CapitalKeys invoked the waiver exception, 28 U.S.C. § 1605(a)(1), arguing that Appellees "waived sovereign immunity by implication," and the commercial activity exception, 28 U.S.C. § 1605(a)(2), arguing that Appellees were not immune because "this action is based on commercial activities" sufficient to strip jurisdictional immunity. J.A. 19; *see also* Appellant Opening Br. 33–46, 46–51. We consider each exception in turn.

The waiver exception applies when "the foreign state has waived its immunity either explicitly or by implication[.]" 28 U.S.C. § 1605(a)(1). The statute fails to identify what constitutes an implicit waiver; nevertheless, we have construed the provision narrowly and emphasized that a finding of implicit waiver turns on evidence of a foreign state's intent to waive its immunity. *See Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) ("[I]mplicit in § 1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity.").

CapitalKeys argues that Governor Masangu implicitly waived the Central Bank's sovereign immunity because the Agreement contained a choice-of-law provision that designated the laws of the District of Columbia as the "exclusive location for any suit or proceeding" related to the Agreement. Appellant Opening Br. 33–34; J.A. 35. Under certain circumstances, courts have

2

found implied waiver in a foreign state's assent to handle any dispute that arises in the courts of the United States. *See World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002). But even if, as the District Court found, the Agreement's choice-of-law provision could effectuate an implicit waiver of the Central Bank's sovereign immunity, *see CapitalKeys, LLC*, 2021 WL 2255362 at *9, Governor Masangu did not have the authority—actual or apparent—to enter into a binding Agreement on behalf of the Central Bank. That authority rested with the Board of the Central Bank rather than its Governor.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency § 2.01 (2006). CapitalKeys points to DRC law Act No. 005/2002; J.A. 402–16, the Central Bank's governing statute, to demonstrate that Governor Masangu had actual authority to enter the Agreement on behalf of the Central Bank. Appellant Opening Br. 43; *see* Restatement (Third) Of Agency § 1.03 cmt. c. (2006) ("Within public-sector organizations, the authority associated with a position is often defined by legislation or by administrative regulation."). A common-sense reading of the law proves opposite.

The law in question provides that that the Board "is the highest body with the most extensive powers to conceive and direct the Bank's policy and supervise the management thereof." Act No. 005/2002 art. 18; J.A. 404. The Governor sits on the Board of seven as chair, *id*. at art. 21; J.A. 404, but must "regularly keep the Board informed" via quarterly updates and submit "draft[] acts that he deems necessary to accomplish the Banks' mission and policy to the Board for their approval." *Id*. at art. 31; J.A. 405. In addition, the governing statute empowers the Governor to "solely or jointly sign contracts *concluded* by the Bank," as well as "the Banks' correspondence and other documents." *Id*. (emphasis added).

Nothing in the pertinent law indicates that Governor Masangu enjoyed actual authority to enter agreements like the one at issue in this case without Board authorization, let alone to waive the Central Bank's sovereign immunity. What is more, there is no record evidence that Governor Masangu could have reasonably thought otherwise. CapitalKeys argues that the Governor had the necessary authority because the statute entrusts him with management of the Central Bank and provides that he has "all the powers necessary to perform the day-to-day management of the Bank." *Id.* at art. 30; J.A. 405; Appellant Opening Br. 44. We are not convinced. Appellant's view of the statute does not account for the Governor's inability to act without Board approval on any matter not related to operational and administrative oversight of the Central Bank, nor does it address the limitations on the types of contracts the Governor has power to "solely or jointly" sign: he can sign contracts already concluded by the Bank exclusively. *See* Act No. 005/2002 art. 31; J.A. 405. Taken together, a more coherent reading of the law is that the Board must agree to a contract before its Governor can sign it. Thus, Governor Masangu did not have actual authority under Act No. 005/2002 to bind the Central Bank to the Agreement with CapitalKeys thereby waiving its sovereign immunity.

Despite this lack of actual authority, CapitalKeys asserts that Governor Masangu had apparent authority to enter the Agreement for not only the Central Bank, but also the DRC. Appellant Opening Br. 34–41. "Unlike actual [authority] . . . apparent [authority] depends in large part upon the representations made to the third party and upon the third party's perception of those representations." *Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1416 (D.C. Cir. 1983). Accordingly, "an agent's apparent authority originates with expressive conduct by the principal toward a third party" and "is present only when a third party's belief is traceable to manifestations of the principal." Restatement (Third) of Agency § 3.03 cmt. b.

At present, our Court has not determined whether apparent authority is sufficient to waive sovereign immunity. Some members of our District Court have held it insufficient, reasoning that the waiver exception "encompasses only agents of the foreign state who are *actually* authorized to waive sovereign immunity." *SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21, 38–39 (D.D.C. 2017) (emphasis in the original); *see CapitalKeys, LLC*, 2021 WL 2255362, at *10 ("[F]or FSIA purposes, *actual* authority to waive sovereign immunity is required.") (emphasis in original).

Other Circuits have held otherwise. *See First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 194 (2d Cir. 1989) (identifying "[t]he question . . . whether [an agent] . . . possessed the apparent authority . . . to waive . . . sovereign immunity" as a "factual inquiry into the principal's manifestations to third persons"); *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1299 (11th Cir. 1999) ("under the FSIA, courts should assume that an ambassador possesses the authority to appear before them and waive sovereign immunity absent compelling evidence making it 'obvious' that he or she does not."); *but cf. Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 308 (9th Cir. 1997) (concluding that Congress intended for the commercial activity exception to apply "only in cases of actual authority"). We need not weigh in on whether actual or apparent authority is required to waive sovereign immunity, however, because the District Court's finding that Governor Masangu lacked apparent authority easily survives clear-error review. *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004) (Though we review the District Court's dismissal of a case for lack of subject matter jurisdiction *de novo*, "we review the district court's findings of fact — including facts that bear upon immunity and therefore upon jurisdiction — for clear error."). A brief discussion of the facts at issue demonstrates why.

In response to the Central Bank's motion to dismiss, CapitalKeys argued that apparent authority of the Governor to enter the contract was established because "the Governor represented that he had the authority to sign a contract on behalf of the Central Bank," a representation upon which CapitalKeys reasonably relied. J.A. 364. The District Court found this assertion "legally insufficient" because "apparent authority requires a manifestation of authorization *by the principal* (the Central Bank) rather than the agent (Governor Masangu)." *CapitalKeys, LLC*, 2021 WL 2255362, at *10 n.14 (emphasis in the original). The Court also found nothing in the complaint or evidentiary submissions to prove that such manifestations ever occurred, leading it to conclude that CapitalKeys's view was "wholly implausible." *Id*. On appeal, CapitalKeys points to several

4

factual assertions to prove otherwise but fails to demonstrate any error in the District Court's findings.

Appellant reiterates its reliance on oral representations by Governor Masangu and high-ranking DRC officials that the "President of the [DRC] had authorized their entering into the [A]greement . . . on behalf of both the Central Bank and the [DRC]." Appellant Opening Br. 39. It claims that the parties engaged in six months of negotiations prior to entering into the Agreement, received a good-faith payment of $600,000 as consideration for the Agreement one-month prior to its execution from the DRC, and that various representatives of the DRC's President, including the Chief of Staff and Counsel, accompanied Governor Masangu to Washington, D.C. when it came time to execute the Agreement. *Id.* Over the course of the next two years, CapitalKeys reports that it hosted "several further delegations of DRC representatives" each of which confirmed the binding nature of the Agreement and made promises that full payment would be forthcoming. *Id.* at 40–41. Finally, CapitalKeys points to a letter it received from the President's office sent by the Chief of Staff that thanked CapitalKeys for its services and again, promised payment. *Id.*

The problem for CapitalKeys, however, is that even if it accurately captured what transpired between the parties, an assertion that the Central Bank contests, *see* Appellee Br. 40 n.9, it has not demonstrated that Governor Masangu's apparent authority is traceable to the conduct of his principal, the Central Bank. Moreover, CapitalKeys cannot explain how the President of the DRC, the head of a distinct legal entity, could have authorized the Governor to waive the Central Bank's jurisdictional immunity. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 440 (D.C. Cir. 1990) ("Under FSIA, agencies and instrumentalities of a foreign nation are presumed to be separate from each other and from the foreign state."). The DRC could not have directed an agent of the Central Bank to enter into a binding agreement in contravention of the Bank's governing statute, and CapitalKeys has not traced its belief in Governor Masangu's authority to do so to any action taken by the Central Bank. Finally, it is worth reiterating that Governor Masangu and CapitalKeys's President were the only signatories to the Agreement. As such, it is not at all clear what role, if any, the DRC played in retaining services from CapitalKeys, let alone in waiving its sovereign immunity via a document to which it is not a signatory.

Because there is no evidence of apparent authority, there is no need to wade into the circuit split concerning whether apparent authority is sufficient to waive a sovereign's immunity.

Appellant's arguments in support of the commercial activity exception fare no better.

Section 1605(a)(2) permits the Court to exercise subject matter jurisdiction over a presumptively immune foreign state when the action is based upon "a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). FSIA defines this provision to mean "commercial activity carried on by such state and having substantial contact with the United States." *Id*. at § 1603(e); *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988). Because Governor Masangu acted outside his authority in signing the contract, neither

the contract nor the alleged default amount to commercial activity "carried on by" the DRC or the Central Bank. 28 U.S.C. § 1603(e).

In sum, CapitalKeys has failed to prove that its claims against the Central Bank and the DRC fall into an exception under FSIA. Accordingly, we affirm the District Court's dismissal of this matter for lack of subject matter jurisdiction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk